ALICE JOY BAKER, appellant, v. ROSS M. BAKER, appellee.

## No. 50182.

(Reported in 110 N.W.2d 236)

AUGUST 15, 1961.

Jasper W. Morgan and Simon W. Rasche, Jr., both of Clinton, for appellant.

John L. Delaney, of Clinton, for appellee.

LARSON, J.—On December 18, 1959, plaintiff filed her petition asking a divorce from defendant upon the ground of cruel and inhuman treatment. Pursuant to defendant's motion to make her petition more specific, she amended her petition and included a second ground, that of addiction to habitual drunkenness after marriage. Subsequent to defendant's answer denying all allegations of wrongdoing, trial was had and the court dismissed the petition for failure of plaintiff to establish those grounds by a preponderance of the evidence. After a careful review of the record, we must agree with the trial court.

I. Both or either of the grounds alleged in plaintiff's petition, established by a preponderance of the credible evidence, would entitle her to a divorce under the laws of this state. Section 598.8(4) and (5), Code, 1958. However, it is

well known that in this state each case involving the allegation of cruel and inhuman treatment such as to endanger the life of the spouse (section 598.8(5)) must be determined upon its own facts as established by the evidence. We have often said prior determinations are of little aid in solving the case at bar. Renze v. Renze, 247 Iowa 25, 72 N.W.2d 490, and citations. This is at least partially due to the characteristics of the individuals themselves for no two couples are exactly alike. Also bearing on the matter is the resultant relationship as contrasted with that which could reasonably be expected between these parties in marriage. Bouska v. Bouska, 249 Iowa 281, 86 N.W.2d 884; Frye v. Frye, 245 Iowa 563, 63 N.W.2d 242; Lewis v. Lewis, 235 Iowa 693, 17 N.W.2d 407; Brown v. Brown, 248 Iowa 802, 82 N.W.2d 661. It is plaintiff's burden to show sufficient ill treatment to endanger plaintiff's life, and failure to do so must result in a denial of the relief prayed. Likewise as to the allegations of addiction to habitual drunkenness (section 598.8(4)), the burden of proof follows the general rule and is upon the one asserting it.

▮ Preponderance of the evidence, of course, does not depend upon the number of witnesses, but does consider the interests of the witnesses, the reasonableness of their testimony, and the probabilities of their proper evaluation of incidents related. It relates to the weight and sufficiency of the evidence produced. Garretson v. Harlan, 218 Iowa 1049, 256 N.W. 749.

▮ II. Plaintiff's two propositions relied upon for reversal are that the trial court erred in finding she did not sustain her burden of proving either alleged ground by a preponderance of the evidence. The suit being in equity, we of course review the evidence and must determine for ourselves whether it was of the necessary weight and sufficiency to grant her relief. In doing so we do not lose sight of the well-established rule that where the evidence is in contradiction, as it is here, and the credibility of each witness is important, we give weight to the fact findings of the trial court. Clough v. Clough, 248 Iowa 1090, 1098, 84 N.W.2d 16. In the Clough case we pointed out that where the utter improbability of many of the charges made by plaintiff appears, together with the unreasonableness

of many of her conclusions due to comparatively minor incidents, the conduct and attitude of plaintiff on the witness stand was significant. The sincerity and frankness of answers which vitally affect the weight to be given one's testimony can best be determined by direct observation during that testimony. Obviously the trial court, in forming its opinion as to the truth of contradictory statements of the parties, has the opportunity to observe many things which the printed pages of the record do not offer us. Thus, giving the proper weight to the trial court's evaluation of the testimony, we examine the record pertaining to the probability or improbability of some of plaintiff's charges. We must decide whether they disclose the reasonableness of many of plaintiff's conclusions, as a result of what defendant claims were comparatively minor and insignificant incidents. Defendant contends any occasional use of certain profane expressions when he became irritated at home or at work did not indicate his ill will or contempt for plaintiff. He also points out, under our decisions, the application of minor force or the use of certain words or expressions during a family quarrel does not necessarily indicate acts of cruelty or inhuman treatment such as will justify the granting of a divorce. We so held in the recent case of Moffett v. Moffett, 250 Iowa 756, 94 N.W.2d 778, involving a spanking incident.

III. The record discloses these parties met early in 1953 and that the courtship continued until they married in October 1956. During that period the plaintiff, regularly employed as a secretary and bookkeeper, had the unique experience of working with defendant, also regularly employed as a civil engineer, in obtaining and operating a motorcycle business in Clinton, Iowa. She applied her skill and knowledge to aid defendant in establishing a paying business. This business was purchased about two months after the parties met, and both spent their evenings, Saturdays and Sundays operating the shop. She also helped financially, waited on customers, and was "his right-hand man". Apparently both were interested in the enterprise and each became well acquainted with the character, habits and interests of the other before marriage. They made their plans for the future together, and defendant adopted

plaintiff's religion prior to the ceremony. If plaintiff found any of defendant's habits displeasing at that time, it does not appear in the record. She testified she drank with him socially and knew on such occasions that he liked to drink a few beers. She often heard him use certain profane expressions when his efforts in the shop went amiss. Clearly they were jointly devoted to their tasks and intentionally kept the shop open until late at night. By putting profits back into the business, its net estimated value in 1959 was approximately $60,000. From a modest start with about $500, that was quite a gain.

After the marriage they continued to operate the shop, and lived in an apartment until nature diverted their paths. Plaintiff became afflicted with spinal curvature in July 1958. At her request she was taken to the home of her mother for care and treatment. She stayed three months. On February 22, 1959, a child, Scott Gregory Baker, was born and again plaintiff went to the home of her mother, this time until July 1959. An unfortunate circumstance arose at this point. The first time plaintiff was taken to her mother's home for care, her brother was away and plaintiff and her husband occupied his room there. However, after the birth of the child the brother had returned. Defendant, therefore, was forced to live alone at the apartment.

Even before the child was born, plaintiff had become dissatisfied with their apartment and sought another. Although defendant had purchased an old house, she refused to live there and help him modernize it. To induce plaintiff to bring the child and return to their home, it appeared necessary for defendant to use his "rainy day" fund of $2000 to make a down payment on a $17,500 modern house. They moved in that residence in July 1959, but on December 17, 1959, plaintiff took all her belongings and the child and returned to her mother's home.

In her divorce petition plaintiff asked an injunction to restrain defendant from disposing of or concealing the assets of the business, temporary alimony and support money, attorney fees, permanent alimony and child support, custody of the child, one half the assets of the business, and one half the equity in the

1166

real estate owned by the parties. In many ways her demands resemble a request for a partnership dissolution. Of course a marriage relationship is something quite different.

Incompatibility or mere family arguments and disagreements are not grounds for a marriage dissolution under Iowa law. Renze v. Renze, supra, 247 Iowa 25, 30, 72 N.W.2d 490, and citations.

The acts of cruelty of which plaintiff complains are that defendant on several occasions struck her and threatened to knock her down, that he pinched her and stepped on her feet when she did something to displease him at the shop, that he swore at her and refused to give her money for food and necessities, that he neglected her, and that during the year 1959 he came home very late in a drunken and disorderly condition four out of five nights. We find no substantial evidence of such conduct. It is true, plaintiff testified specifically that on two occasions defendant slapped her, both times in the presence of her mother. She said he did not strike her with his fist or knock her down. Her mother corroborated that testimony and also said she saw defendant drunk on many occasions and heard him curse and threaten plaintiff at various times. Plaintiff admitted the profane expressions used by defendant when irritated at her were those he used when he became irritated at some shop task that resisted his effort. We think these at best were but minor incidents of this marriage and, as pointed out in the case of Moffett v. Moffett, supra, standing alone, are not substantial evidence of cruel and inhuman treatment.

Plaintiff's only other witness, her brother, testified that at her request he followed defendant on several occasions, saw him visit taverns and drink beer with others, drank beer with him and observed him drive home in an intoxicated condition. However, on no occasion did this witness observe any mistreatment of plaintiff by defendant, although he was frequently in their home.

Defendant, on the other hand, testified he never struck, threatened, or swore at plaintiff and had not on any occasion been drunk since their marriage. He admitted frequent social drinking of a few beers in taverns with a customer or prospec-

tive customer, and explained his late hours as his usual and necessary business practice unchanged over their married life, not neglect of his wife. He specifically denied there was ever any shortage of food in the home.

Several business associates, his employers, and other responsible witnesses testified defendant was not addicted to drunkenness, that they had never seen him drunk, that he had not lost a day from work over that period of time, and could not do the work he had been doing if he had used intoxicants to excess. On no occasion had he drunk more than two or three beers when they were with him, and that his reputation for sobriety was well known.

IV. It is clear plaintiff had become upset and nervous, but not so clear that the fault was defendant's. She herself attributed her loss of weight to "nervousness, shortage of food in the house, partially." Her weight on December 18, 1959, she said, was 104, and her normal weight 112 to 114 pounds. She testified she had been under a doctor's care for nervous and physical disorders for a year and a half, and this of course was prior to her complaints against defendant. There was no medical testimony offered, but plaintiff testified Doctor Blohm treated her for a spinal curvature. Doctor Monahan attended her during pregnancy, and Doctor Barrent for her nervousness. Doctor Barrent thought her diffused goiter was activated by her nervous condition and prescribed thyroid tablets. She thought she needed "adjustments". Due to the incidents related, plaintiff concluded that her nervousness and its effect was a result of defendant's conduct and that it endangered her life. We do not think this conclusion is reasonable, nor that the incidents related, even if true, were the cause of her nervousness. It is not sustained by substantial evidence and, we think, not justified by the minor incidents related. Her doctors could have been called to corroborate her conclusion if it was probable. They were not called and we cannot assume they would have agreed with her if they had been. It is our conclusion her proof of nervous aggravation and loss of weight falls far short of showing danger to her life. It is true there was evidence that she was a person of sensitive nature, but none appears that

defendant had offended that nature willfully. As to our views on this issue, see Record v. Record, 244 Iowa 743, 749, 57 N.W.2d 911; Renze v. Renze, supra, at page 30 of 247 Iowa, and citations; Moffett v. Moffett, supra, 250 Iowa 756, 94 N.W.2d 778; Clough v. Clough, supra, at page 1097 of 248 Iowa.

V. In view of all the testimony and revealed circumstances, the trial court properly found that the financial accomplishments of defendant since marriage, and the fact that he had held a full-time important position at the Clinton Corn Processing Company over that period and never lost a day at either job, belied any charge of habitual drunkenness. It also found "if there was any cruel and inhuman treatment upon the part of the defendant practiced toward the plaintiff it was occasioned unwittingly by his devoting so much time to working and earning money." The court also observed, as we have, that these propensities were evident to the plaintiff for a period of some years prior to the marriage and that she did not complain of them then. In fact, we think she encouraged them by her direct cooperation.

We detect in this case a growing dissatisfaction by plaintiff with her bargain. This dissatisfaction was not retarded by daily association with her mother and by relying upon her for constant care about eight months of her married life. Apparently she had no faith or confidence in defendant's assistance in the problems of the home. What she thought at first was an admirable ambition in defendant now appeared like a selfish and overwhelming desire for only financial gain. That this relentless pursuit of business success did not bring to plaintiff the life of love, consideration and security, as she had hoped, is evident. Even without her at his side, he appeared to happily pursue his love of business. This, we think, probably accounts for plaintiff's frustration, her nervousness and her unhappiness. Defendant says he loves his wife and child and wants them back. Perhaps he, like many others, has taken these God-given treasures for granted and now realizes that by doing so he missed the happiness and beauty to be found in the home. At last he seems to have awakened and has attempted to place family

obligations first. While we cannot compel these parties to return to the common home, we must agree with the trial court that plaintiff has not produced substantial evidence of sufficient weight to prove the acts complained of or sufficient to entitle her to the relief asked. Therefore, the judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.