ADELINE R. JONES, appellee, v. JAMES E. JONES, appellant.

No. 50939.

(Reported in 121 N.W.2d 668)

MAY 7, 1963.

Richard C. Turner, of Council Bluffs, for appellant.

Roy W. Smith, of Council Bluffs, for appellee.

LARSON, J.—On February 26, 1962, plaintiff filed her peti-

tion for divorce from defendant alleging that "without just cause and without any fault" on her part defendant "has been guilty of such cruel and inhuman treatment of and towards this plaintiff such as to endanger her life and health", entitling her to a divorce. Defendant was duly served with an original notice, but for reasons unimportant to this decision did not appear. On May 3, 1962, a hearing was had and plaintiff was awarded a decree of divorce from defendant. Custody of the couple's only child, a boy of seven years, was awarded plaintiff, and she was granted all the property and support money of $75 per month for the child. Defendant sought a new trial, which was denied, and he appealed to us. Fearing the removal of the child from the jurisdiction, defendant also applied to this court for and obtained a stay of execution of the decree until the appeal was decided. While there are many contentions and issues raised herein, we find it only necessary to decide the question of whether plaintiff has by a preponderance of the credible evidence established her alleged grounds for divorce. We think she has not, and the decree granting her a divorce must be reversed.

I. A decree of divorce may be granted against the husband "when he is guilty of such inhuman treatment as to endanger the life of his wife" (section 598.8(5), Code of Iowa, 1962) and the burden of proof is upon the one asserting it. It was plaintiff's burden here to show sufficient ill-treatment to endanger her life, and a failure to do so, whether the matter was contested or not, must result in a denial of the relief prayed. Baker v. Baker, 252 Iowa 1161, 1163, 110 N.W.2d 236, and cases cited therein; Hopping v. Hopping, 233 Iowa 993, 10 N.W.2d 87, 152 A. L. R. 436. Each case involving such a charge, of course, must be determined upon its own facts as established by the evidence. Little aid in solving the case at bar can be found in prior determinations, as we have often recognized that no two couples are exactly alike in their characteristics and general makeup. Renze v. Renze, 247 Iowa 25, 72 N.W.2d 490, and citations; Baker v. Baker, supra.

II. These matters being in equity, we of course review the evidence and determine for ourselves whether it was of the necessary weight and sufficiency to grant the relief prayed.

It is true we observe the rule that where credibility of the witness is important, weight is given to the fact findings of the trial court. Clough v. Clough, 248 Iowa 1090, 1098, 84 N.W.2d 16. The sincerity and frankness in giving clear, complete and concise answers obviously affect the weight to be given one's testimony in such matters, and the trial court has some advantage over us in that respect. Nevertheless it is for us to decide whether the testimony in this record supports the conclusions of plaintiff as to the seriousness of the incidents related and the reasonableness of the effect claimed. The application of minor force, or the use of swearwords or expressions during a family quarrel, or moodiness provoked or not provoked, does not necessarily indicate acts of cruelty or inhuman treatment that will justify a decree of divorce. Moffett v. Moffett, 250 Iowa 756, 94 N.W.2d 778; Jewett v. Jewett, 252 Iowa 883, 109 N.W.2d 36; Baker v. Baker, supra.

III. This record, perhaps typical in such default matters, is brief and leaves much to be desired as to relevant and material circumstances. Plaintiff testified she had lived in Council Bluffs thirteen and one-half years, that the parties were married August 8, 1948, had one son, James Randall Jones, age 7, that she was employed in the Trust Department of the First National Bank of Omaha, that her husband, James E. Jones, was a bookkeeper for Iowa Soda, that his take-home pay was about $380 per month and hers was $200. They owned and lived in a house at 256 Vine Street and its value was about $15,000. She testified defendant within the past year had on *one* occasion slapped her and knocked her glasses across the kitchen and had grabbed her by the throat. The reason she said was "Jealousy I guess." She had had an argument with him, but denied she had provoked him. When asked how he acted she said "I don't know. He just seems to resent me." To the question, "* * * does he check on you or your coming or going", she answered "Oh, yes." She did not answer the question, "Does he accuse you with running around with other men?", but said, "He just checks on me all the time." She further testified they got along all right "as long as he always has his own way." When asked "What seems to be the problem there?", she said "I don't know." She said if she does not give in, "Well, he goes into a pout. He doesn't speak

to me for days on end", and he becomes moody and morose. She said he has not talked with her for "as long as a week." She answered the question, "Has he ever swore at you?" by saying "He has", but gave no details. As to the effect upon her, she said "Well, I guess it made me nervous." She testified she had been under the care of Doctor Best for her nerves and that her general physical condition had deteriorated in the past year. She lost weight and had headaches. She said she was afraid of her husband "when he flies into these tantrums" and complained that "He is a mother's boy", preferring his mother's wishes and desires to hers. Their son was not permitted to have a kitten because she said his mother did not like cats. "It's just that sort of a thing all the time." It was her opinion this incompatibility commenced after their son was born, and had gotten worse in the past year.

A former neighbor, Opal Finney, was her only corroborating witness, and her testimony also leaves much to be desired. She had never seen the defendant strike the plaintiff, but had observed that "He was very cranky to her and cut her very short or wouldn't speak to her at all and carried on no conversation at all." Her observation covered a period of about two years. She had the feeling that defendant was inordinately jealous of plaintiff and checked on her without cause, and she thought plaintiff's personal conduct had been above reproach. As to the effect of defendant's treatment, she said, "I have seen her very ill * * * her nerves were bad. She would shake after one of these scenes." The witness had never seen defendant in a rage, but "She [the plaintiff] has come over afterwards and been very nervous and upset."

Giving to this testimony the benefit of all inferences and presumptions possible, we are unable to find more than a growing incompatibility and no such treatment as can be said to endanger plaintiff's life or health. If this showing alone were to be accepted as sufficient to meet the requirements of our statute, then it may be said the marital status of many couples would be in jeopardy. We feel the testimony does little more than disclose the ordinary arguments and quarrels of married life, and does not disclose something which the ordinary experience of men informs us will endanger life. Renze v. Renze, supra, 247 Iowa

25, 30, 72 N.W.2d 490, 493. The feeling that the whole story and the underlying cause of this family rift were not told the court was well founded when, in the motion for a new trial, it appeared that on the very next day after this decree was entered plaintiff traveled to Oklahoma with a former neighbor and married him. This occurred in spite of the fact that the decree provided "all the rights, privileges and immunities of unmarried persons" were restored "except the right to remarry within one year of the date of this decree."

Incompatibility or mere family quarrels or arguments, even when accompanied by minor physical applications, are not grounds for a marriage dissolution under Iowa law. Moffett v. Moffett, supra, 250 Iowa 756, 94 N.W.2d 778 (spanking); Baker v. Baker, supra, 252 Iowa 1161, 110 N.W.2d 236 (striking and pinching); Renze v. Renze, supra, 247 Iowa 25, 72 N.W.2d 490 (elbow jabbing). In all of these cases, as here, plaintiff claimed defendant's conduct made her nervous and she lost weight, but there was a failure to show satisfactorily that plaintiff was of such a sensitive nature that these acts endangered her health.

It is true we have often said physical abuse is not always essential to establish cruelty such as to require a divorce. Kleinendorst v. Kleinendorst, 253 Iowa 1024, 1027, 115 N.W.2d 155, 157; Sullivan v. Sullivan, 244 Iowa 838, 56 N.W.2d 910; Murray v. Murray, 244 Iowa 548, 57 N.W.2d 234; Ernest v. Ernest, 243 Iowa 1249, 55 N.W.2d 192; and many others. However, we think a careful study of these cases will reveal some special circumstance, such as an extremely sensitive nature or physical condition, was involved. There was no showing whatsoever of such a circumstance in the case at bar. There was no medical testimony offered, and it could well be that plaintiff's nervousness was largely created by her own involvement with the other man and his family problems, no matter how benevolent and generous her intentions may have been. There was no substantial corroboration of defendant's fault, for plaintiff's only witness testified as to results, not causes, of plaintiff's distress. We are also not convinced the so-called defendant's "tantrums" were not provoked by plaintiff herself. Her para-

mount sympathy and loyalty, we think, was owed to her husband, not to the other man and his family.

It appears from plaintiff's evidence the cause of the quarrels was "Jealousy I guess", and they may well have been justified. While this is one of the few default cases brought to this court for review, it must be clear the same burden of proof rests on plaintiff in a default case as in a contested matter. All in all, we find an insufficient showing of either defendant's unprovoked acts of cruelty or of the alleged effect on plaintiff's health or life.

IV. It has often been said that the State is an interested party to the marriage relationship and, while a man and his wife cannot be forced to live together, the bonds of matrimony cannot be severed at the will or pleasure of either or both without good cause. It was not shown here by the requisite degree of proof, and the divorce decree must be set aside.

V. Only one other matter need be considered herein. Appellee's motion to dismiss presented to this court March 11, 1963, was ordered submitted with the appeal. It is now overruled. The sole jurisdiction of the matter was placed in the Supreme Court by appellant's appeal on July 13, 1962, and, as determined by the trial court, any proceedings had before it thereafter were null and void. McCauley v. Municipal Court of Des Moines, 254 Iowa 1345, 121 N.W.2d 96. In addition, we find under these circumstances no merit in appellee's contention that by a subsequent appearance before the trial court on a motion to modify the original decree on July 16, 1962, appellant abandoned his appeal in the matter. Also, the motion to dismiss was not timely. See rule 348(a).—Reversed.

All JUSTICES concur.