BERNARD FRANCIS DOERFLEIN, appellant, v. JOHN E. BENNETT, warden, Iowa State Penitentiary, appellee.

No. 52099.

SEPTEMBER 20, 1966.

REHEARING DENIED NOVEMBER 15, 1966.

Simmons, Perrine, Albright, Ellwood & Neff, of Cedar Rapids, for appellant.

Lawrence F. Scalise, Attorney General, and Don R. Bennett, Assistant Attorney General, for appellee.

STUART, J.—Petitioner, a prisoner in the Iowa State Penitentiary at Fort Madison, filed a petition for a writ of habeas corpus alleging illegal imprisonment on the ground that he was denied assistance of counsel and the right to a speedy trial in violation of Amendment 6 to the Constitution of the United States, made applicable to the states by the due process clause of Amendment 14, and section 10, Article I, of the Constitution of the State of Iowa.

On April 3, 1959, county attorney's informations were filed in Linn County charging this petitioner with "Robbery with Aggravation" and other offenses. He learned of the charges while in the Blackhawk County jail awaiting transfer to the

penitentiary at Fort Madison to serve a five-year sentence under a prior conviction.

The April term of court in Linn County commenced April 13, 1959. On May 18, 1959, he wrote Richard Nazette, then Linn County Attorney, from Fort Madison informing him he knew of the "warrants", asked what action was intended and stated: "The defendant prays that your office will help him to a speedy court date without legal entanglement".

Three and one-half months later, on September 2, 1959, but still in the April term, the county attorney wrote petitioner stating: "The charges against you in Linn County will come on for trial during the September term of court, and in the event you are desirous of standing trial we shall appreciate having you advise us so that we might arrange to assign these cases." He was also informed the county attorney would recommend the sentences for the various offenses run concurrently on pleas of guilty.

The September term of court commenced September 7, 1959. On September 11, 1959, petitioner wrote the county attorney denying his guilt and requesting a personal interview on or about September 28, 1959. He also stated: "It is agreeable with me to be arraigned at the September term of court, however, I am now without funds and must request a court appointed attorney should trial by jury become necessary."

The November term of court commenced November 2, 1959. On November 20, 1959, the county attorney wrote petitioner that a month prior he had been contacted by an attorney who said he would return to discuss the case, but had not done so. He stated: "The case charging you with robbery with aggravation has been assigned for trial for this term of court, and if this attorney is to represent you, I trust you will advise him to contact this office immediately so that the necessary arrangements for the trial may be made, or, if he is not going to represent you and you wish to have the court appoint an attorney for you, if you will advise us, we shall make the necessary arrangements."

The county attorney testified a Mr. Gross claiming to be a practicing attorney in Montana and Decorah, Iowa, told him he "was going to see Mr. Doerflein in Fort Madison in the next few

days and would contact me upon his return to Cedar Rapids, and advise me as to what further disposition might be made of the case."

Doerflein, when asked if he had any legal counsel or representation in this matter, answered: "I had a little legal counsel, yes, sir, it never materialized, but I had legal counsel. Q. From whom? A. One attorney, Everett W. Gross."

On cross-examination, he testified:

"At the time (referring to the years 1959 and 1960) I corresponded with Mr. Gross just about once a week. As a generalization, the correspondence between Mr. Gross and myself was on a friendship basis and dealt very little with the different aspects of the case in Linn County. Mr. Gross visited me several times at the prison about the case. * * *

"At that time I had hopes Mr. Gross would represent me in the Linn County prosecution. However, Mr. Gross and myself were meeting so much resistance from the various state heads or institutional heads that I was leary naturally of any success."

On December 18, 1959, petitioner wrote the county attorney enclosing an application for appointment of Everett W. Gross as his counsel, which application was filed December 28, 1959. The same day the county attorney, by letter, advised him the court was willing to appoint counsel for him of his choice who practiced in Linn County. "On the other hand if you prefer someone from outside Linn County, then of course it will be up to you to secure such counsel on your own." On January 12, 1960, Doerflein wrote requesting a formal court order denying his application. He indicated he believed he was entitled to the appointment of counsel of his choice, under section 775.4, Code of Iowa. On January 13, 1960, an order denying the application for the appointment of Mr. Gross on the ground that he was not a member of the bar of Iowa was filed.

The February term of court commenced February 1, 1960. On February 6, 1960, petitioner, per se, filed a Notice of Appeal to the Supreme Court from the ruling denying him the appointment of counsel of his choice.

There were terms of court in April and September. Nothing further was done until October 20, 1960, when petitioner wrote the county attorney requesting him to dismiss the charge because

the information was false and without foundation and he was without funds to employ type of counsel needed to defend such a charge. In a letter dated October 26, 1960, the county attorney advised him the charge would not be dismissed and stated: "If you would like to be returned to stand trial in Linn County, please advise and we shall make the necessary arrangements. Also, if you are desirous of standing trial at this time and are without funds to employ counsel, the court will appoint an attorney to represent you."

In a letter dated November 3, 1960, petitioner requested appointment of counsel. A term of court started November 7, 1960. Judge Maxwell appointed Merle D. Fishel to represent him on November 21, 1960. The county attorney advised him the next term started the last of January and the trial would take place in February or March. In a letter of December 7, 1960, he requested a trial at the next term, also stating: "I dislike the use of the word demand, otherwise, I might have demanded trial in my letter dated May 18, 1959."

The January term of court started January 30, 1961. On February 6, 1961, the sheriff of Linn County was directed to return petitioner to Cedar Rapids for trial. His first contact with his court-appointed attorney was between February 9 and February 12, 1961. On February 8, 1961, the Supreme Court dismissed the appeal on the ground that the order appealed from was interlocutory and not final as required by section 793.2.

He was arraigned and pleaded not guilty on February 14, 1961. On the same date he filed a "Motion to Set Aside County Attorney's Information" on the grounds his constitutional right to due process had been violated by failure to grant a "speedy trial with adequate assistance of competent counsel of his own choice." This motion was overruled and on the same date the matter proceeded to trial.

The jury found him guilty and he was sentenced to 25 years in the state penitentiary. An appeal to the Supreme Court was dismissed on the ground that more than sixty days had elapsed between the judgment and the notice of appeal. This petition for Writ of Habeas Corpus was filed March 17, 1965, and, after hearing, it was denied. This appeal followed.

I. The pertinent portions of Amendment 6 to the United

States Constitution provide: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * * and to have the Assistance of Counsel for his defence." Section 10 of Article I of the Iowa Constitution contains substantially the same provisions. The Iowa provision has been supplemented by the following statutes applicable to this case.

Section 795.2 "If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next regular term of the court in which the indictment is triable or within sixty days, whichever first occurs, after the same is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

Section 795.3 "If the defendant be not indicted or tried as above provided, and sufficient reason therefor is shown, the court may order the prosecution continued from term to term * * * but no continuance under this section shall be extended beyond the following three terms of the court."

We have held that before one charged with a crime is entitled to a dismissal either on constitutional or statutory grounds he must make a demand for trial, resistance to postponement or some other effort to secure a speedy trial. Pines v. District Court of Woodbury County, 233 Iowa 1284, 1295, 10 N.W.2d 574, 583; Hottle v. District Court of Clinton County, 233 Iowa 904, 914, 11 N.W.2d 30, 35; McCandless v. District Court of Polk County, 245 Iowa 599, 604, 605, 61 N.W.2d 674, 677. The rule applies to a person "in the penitentiary serving a sentence for another crime." Hottle v. District Court, supra, page 914 (Iowa). In McCandless v. District Court, supra, page 608 we said: "The requirement under our statute is that one so charged, or his counsel, must appear in court or file a formal demand or request for an early trial, and such a request or demand to any other officer will not suffice."

The trial court, while expressing dissatisfaction with the holding in the McCandless case, denied the petition on the ground that the letter of May 18, 1959, addressed to the county attorney did not meet the requirements of a formal demand or request. He therefore found it unnecessary to determine whether the delay was due to the petitioner's conduct. In his opinion petitioner was denied due process.

We agree with petitioner's contention that the instant case is distinguishable from the foregoing cases because petitioner was confined in the penitentiary and was not represented by counsel. In all three cases cited above the accused was represented by counsel. Under the present trend to extend the constitutional rights of the individual, it would be hypertechnical to require a party unrepresented by counsel to make a formal demand to the court. His letter of May 18, 1959, made it clear that he at that time desired a speedy trial. Subsequent correspondence with the county attorney gave no indication that the request was not proper and would lead petitioner into believing nothing further would be required to assure him of his right to a speedy trial, if he desired it.

We therefore hold the requirement of a formal request for a speedy trial does not apply to an accused who is confined and is not represented by counsel. The letter of May 18 satisfied the requirements of Pines v. District Court, supra, and Hottle v. District Court, supra, and thereafter the state was under obligation to proceed in accordance with sections 795.2 and 795.3, Code of Iowa, unless good cause was shown for a continuance or petitioner by his conduct waived the right to a speedy trial.

II. Sections 795.2 and 795.3 "should be read together and are interpreted to mean that if 'good cause' is shown the court may continue the case, but not beyond three terms of court [citing cases] unless accused waives in some manner his statutory and constitutional privilege of a speedy trial." McCandless v. District Court, supra, page 604.

The facts and circumstances surrounding this case show good cause for continuances over the September and November terms in 1959 and waiver of speedy trial in all subsequent terms up until the trial term. There is no claim the court ever refused to appoint counsel for petitioner. In fact, the county attorney in all appropriate correspondence offered to arrange for court-appointed counsel if desired. No counsel was appointed during these two terms of court because it appeared Mr. Gross would represent petitioner. Before the September term closed Gross had corresponded and visited with petitioner and consulted with

the county attorney. The county attorney never heard from him again.

The county attorney's letter, prior to the November term, offering to have counsel appointed if Gross was not to represent petitioner was followed by an application for Gross' appointment. This appointment was denied during the term and petitioner was again advised counsel from Linn County would be appointed to represent him. He filed his notice of appeal the fifth day of the February term of court.

Certainly these facts constitute good cause for continuing this case over these two terms of court. Petitioner desired a particular lawyer. For a time it appeared he might have been retained to represent him. Apparently he could not pay the fee. The application for Gross' appointment stated he was willing to accept a court appointment.

Petitioner would have objected strenuously to proceeding to trial with court-appointed counsel not of his choosing until the matter of representation by Mr. Gross was resolved. He felt so strongly about this he elected to appeal rather than proceed to trial with other court-appointed counsel.

By appealing, petitioner deprived the trial court of any jurisdiction to proceed with the trial of this case, Jones v. Jones, 255 Iowa 103, 109, 121 N.W.2d 668, 672; McCauley v. Municipal Court, 254 Iowa 1345, 1346, 121 N.W.2d 96; State ex rel. Woodbury County, etc. v. McGraw, 191 Iowa 1090, 1093, 183 N.W. 593; thus waiving any right to a trial while the appeal was pending. The trial court suggested the appeal was not the real reason for the delay as counsel was appointed for petitioner in November 1960, while the appeal was still pending. We do not attach as much significance to this fact as the trial court. There still was no jurisdiction to proceed below and none was obtained until the appeal was dismissed February 8, 1961. There was no duty on the state to seek an early dismissal of the appeal. The delay in trial was primarily, if not wholly, the result of petitioner's efforts to secure Mr. Gross for his counsel and was not attributable to the state.

III. The United States Supreme Court considered the constitutional guarantee of a speedy trial in United States v. Ewell

and Dennis, 383 U. S. 116, 120, 86 S. Ct. 773, 776, 15 L. Ed.2d 627, decided February 23, 1966. They said:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U. S. 77, 87. 'Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon all the circumstances. . . . The delay must not be purposeful or oppressive.' Pollard v. United States, 352 U. S. 354, 361. '(T)he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U. S. 1, 10."

Petitioner does not argue there was oppressive incarceration here. He was serving time under another conviction. For the same reason, he does not urge a speedy trial was necessary "to minimize anxiety and concern accompanying public accusation." He does argue however that "if he had a defense to the charges against him, his ability to establish that defense at trial must have been seriously (perhaps fatally) impaired by this unreasonable delay during which delay he was without counsel and unable (due to his imprisonment on the Blackhawk County conviction) to personally prepare his defense and locate witnesses."

The state concedes "that where a defense or a possible defense is available to a defendant, it would be a denial of due

process if, through no fault of his own, the defendant is prevented from investigating, preparing and preserving that defense for trial", but argues that the burden is on petitioner in a habeas corpus action to show he was precluded from establishing a defense and the record here contains no showing that the delay prevented him from having a fair trial. Without making a judicial determination on the validity of this concession, we agree the record here does not show the delay prevented petitioner from having a fair trial.

The burden is on petitioner to prove the allegations of his petition for writ of habeas corpus by a preponderance of the evidence. Walker v. Johnston, 312 U. S. 275, 287, 61 S. Ct. 574, 85 L. Ed. 830; Zellmer v. Catlin, 253 Iowa 1080, 1083, 114 N.W.2d 925; Furey v. Hollowell, 203 Iowa 376, 378, 212 N.W. 698. There is no support in the record for the assertion made in argument that he was unable to establish the defense of alibi because of the delay. An affidavit of a third party in the court file dated March 11, 1961, places petitioner in Chicago on the date of the robbery. There is no suggestion other witnesses were not available or that this witness could not be found at time of trial. His availability at a subsequent date tends to show his availability at trial time. There was no evidence produced which in anyway tends to establish petitioner's defense was prejudiced by the delay.

"The appellees' [defendants'] claim of possible prejudice in defending themselves is insubstantial, speculative and premature. They mention no specific evidence which has actually disappeared or has been lost, no witnesses who are known to have disappeared." United States v. Ewell and Dennis, supra, 383 U. S. 116, 122.

Even if it were so shown, petitioner would still not be entitled to a writ because the delay was due to his own actions and was neither "purposeful or oppressive" on the part of the state.

IV. Petitioner argues he had a right to the assistance of counsel from the time the information was filed, which right he did not waive and which was denied him. He cites Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758; Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199; White v. Maryland, 373

U. S. 59, 83 S. Ct. 1050; Gideon v. Wainright, 372 U. S. 335, 83 S. Ct. 792; Carnley v. Cochran, 369 U. S. 506, 82 S. Ct. 884. We do not believe these cases are authority for the proposition stated. All but Escobedo involved representation by counsel at some formal proceeding. All but Gideon and Carnley involved the inadmissibility of confessions or admissions made in the absence of counsel. We do not believe these cases are authority for the proposition that a judgment is subject to collateral attack solely on the ground that appointment of counsel was delayed. There were no interrogations or admissions involved here. We hold there is no constitutional requirement that counsel be appointed immediately on indictment under the circumstances here.

The United States Supreme Court in Miranda v. Arizona, 384 U. S. 436, 474, 86 S. Ct. 1602, 1628, June 13, 1966, recognizes that counsel need not be appointed on indictment saying: "If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time."

If they may wait a reasonable time before appointing counsel to investigate, it seems reasonable counsel need not be appointed during the period of time the accused is seeking to obtain appointment of counsel of his choice.

In Escobedo, supra, the U. S. Supreme Court approved the rule announced in Crooker v. California, 357 U. S. 433, 78 S. Ct. 1287, 2 L. Ed.2d 1448, which rejected the rule petitioner seeks, saying at page 491 of 378 U. S.:

"Crooker v. California * * * does not compel a contrary result. In that case the court merely rejected the absolute rule sought by petitioner, that 'every state denial of a request to contact counsel [is] an infringement of the constitutional right *without regard to the circumstances of the case.*' Id., at 440 [2 L. Ed.2d at 1454] (Emphasis in original.) In its place, the following rule was announced:

" '[S]tate refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on

the merits * * * but also if he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to. infect his subsequent trial with an absence of (1) "that fundamental fairness essential to the very concept of justice. * * *." The latter determination necessarily depends upon all the circumstances of the case.' "

In Escobedo the Supreme Court also recognized that a party could waive the right to counsel but found no waiver under the circumstances. Footnote 12 L. Ed.2d 986.

V.   This brings us to petitioner's final argument that delay in appointment of counsel deprived him of due process of law because "his right to a speedy trial could have been preserved and the investigation of the crime and securing of defense witnesses could have been performed immediately."

There is no showing here petitioner's subsequent trial was lacking in "that fundamental fairness essential to the very concept of justice". The delay was caused by petitioner's conduct. There is no showing the appointment of counsel to help petitioner obtain counsel of his own choice would have speeded up the procedure. There is nothing in the record to indicate evidence was unavailable at trial which might have been preserved by the earlier appointment of counsel. We point out once more that the reason counsel was not appointed for petitioner at an earlier time is that he was seeking to compel appointment of a counsel of his own choosing not qualified to practice law in the state.

For reasons hereinabove stated we affirm the denial of the writ of habeas corpus.—Affirmed.

All JUSTICES concur.