John WOLF and Pat Wolf d/b/a
Automotive Engineering Co.,
Appellees,

v.

CITY OF ELY, Iowa, Appellant.

No. 91–876.

Supreme Court of Iowa.

Dec. 23, 1992.

Robert S. Hatala of Crawford, Sullivan, Read, Roemerman & Brady, P.C., Cedar Rapids, for appellant.

Gary J. Shea of Shea Law Offices, Cedar Rapids, for appellees.

ANDREASEN, Justice.

The City of Ely adopted a zoning ordinance in 1978. The district court declared the ordinance invalid because it was not adopted in accordance with a comprehensive plan. Upon review we affirm the district court's declaratory judgment.

## I. *Background.*

John and Pat Wolf own three connecting parcels of land in or adjacent to the City of Ely that have been identified as parcels A, B and C. The Wolfs operate a salvage or junkyard on their property. Parcel A is located in an area that was zoned manufacturing; parcel B is located in an area zoned commercial; and parcel C is located in an area zoned residential or agricultural.

On May 6, 1987, Ely brought an action to enjoin the Wolfs from operating a salvage yard on parcel A. *City of Ely v. John and Pat Wolf*, Linn County, EQ 10962. On October 23, 1989, district judge Paul J. Kilburg entered a decree invalidating Ely's manufacturing (M–1) zoning classification and denying the City's request for injunctive relief. The court held the M–1 classification was invalid because the 1978 ordinance constituted exclusionary zoning and was not promulgated pursuant to a comprehensive plan as required by Iowa Code section 414.3 (1977). No appeal was taken from the court's judgment.

The Wolfs filed the present action on April 9, 1990, seeking a court judgment declaring the entire zoning ordinance invalid and their use of their property (parcels A, B and C) lawful.[1] The Wolfs allege the entire zoning ordinance is invalid for two reasons. First, it was not adopted in accordance with a comprehensive plan. Second,

---

1. Because no appeal was taken by the Wolfs from the district court judgment, we need not address their request for issuance of a writ of mandamus contained in count II of their petition.

it is overbroad and exclusionary in violation of their constitutional due process rights.

Following trial, district judge Thomas M. Horan entered a ruling and judgment on June 3, 1991. The court concluded the "ordinance was not made in accordance with a comprehensive plan as required by Section 414.3, the Code." Accordingly, the court declared Ely's entire zoning ordinance invalid.

On June 6, Ely filed its notice of appeal. Shortly thereafter, on June 13, the Wolfs filed a timely motion to enlarge the district court's findings pursuant to Iowa Rule of Civil Procedure 179(b). The court, over Ely's objection, granted the Wolfs' motion on June 28. The court amended the June 3 ruling and judgment to add that the city zoning ordinance is invalid because it is overbroad and constitutes exclusionary zoning in violation of the Wolfs' constitutional rights to due process of law. Ely did not appeal this ruling, but in its resistance to the rule 179(b) motion, the City urged the district court did not have subject matter jurisdiction to enter any order after it had filed a notice of appeal.

On August 19, the Wolfs filed, pursuant to Iowa Rule of Appellate Procedure 23(a), a motion to dismiss the appeal urging Ely's failure to appeal the June 28 ruling and judgment rendered any remaining issues moot. Ely resisted, and on September 24, we entered an order directing that the Wolfs' motion to dismiss be submitted along with this appeal. We will address the motion to dismiss before addressing the issues raised on appeal.

## II. *Motion to Dismiss the Appeal.*

Ely, in its resistance to the motion to dismiss the appeal, urges the June 28 ruling and judgment is void because the district court was divested of jurisdiction when the appeal was perfected. Ely relies upon the general rule that the trial court loses jurisdiction over the merits of the controversy when an appeal is perfected. *Hulsing v. Iowa Mut. Ins. Co.,* 329 N.W.2d 5, 7 (Iowa 1983); *In re Estate of Tollefsrud,* 275 N.W.2d 412, 417 (Iowa 1979); *Jones v. Jones,* 255 Iowa 103, 109, 121

N.W.2d 668, 672 (1963); *see also* cases recognizing the general rule but finding an exception *In re B.L.,* 470 N.W.2d 343, 347 (Iowa 1991); *Universal Coops. Inc. v. Tasco,* 300 N.W.2d 139, 142 (Iowa 1981).

An appeal is taken and perfected by filing a notice of appeal with the clerk of court where the order, judgment or decree was entered. Iowa R.App.P. 6(a). Generally, the appeal must be taken within thirty days from the entry of the order, judgment or decree. Iowa R.App.P. 5.

When (1) a motion to enlarge or amend (Iowa R.Civ.P. 179(b)), (2) a motion for judgment notwithstanding the verdict (Iowa R.Civ.P. 243), or (3) a motion for new trial (Iowa R.Civ.P. 244) is pending prior to the taking of an appeal, the decree to which the motion is addressed becomes in effect interlocutory until the court rules upon the motion. *Hulsing,* 329 N.W.2d at 7; *Recker v. Gustafson,* 271 N.W.2d 738, 739 (Iowa 1978).

Unlike their federal counterpart, our appellate rules do not provide that a notice of appeal, filed before the disposition of a postjudgment motion, shall have no effect. *See* Fed.R.App.P. 4(a)(4); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225, 229 (1982) (under federal rule the district court is given express authority to entertain timely posttrial motions; a previously filed notice of appeal has no effect— it simply self-destructs). The general rule that the district court loses jurisdiction when an appeal is perfected has application when the appeal is taken before the filing of posttrial motions. We hold that Ely's notice of appeal conferred jurisdiction on the appellate court and divested the district court of jurisdiction to rule upon the Wolfs' rule 179(b) motion.

However, a timely filed posttrial motion may be addressed by the district court if the appellate court remands the cause to the district court. Iowa R.App.P. 12(g). The application for limited remand should be promptly made so that posttrial motions can be addressed by the district court. We recognize judicial economy may

be promoted by a prompt remand. Remand upon a rule 179(b) motion may allow issues that were overlooked or ignored by the district court to be brought to the court's attention and can be used to preserve issues for appellate review that would otherwise be lost. However, the application to the appellate court for a limited remand will not revive a time-barred posttrial motion. *See Hearity v. Board of Supervisors*, 437 N.W.2d 907, 908 (Iowa 1989).

### III. *Comprehensive Plan.*

It is said:

Comprehensive zoning is general zoning throughout a municipality according to a comprehensive plan to control and direct the use and development of property in the area by dividing it into districts according to present and potential uses.

*Brackett v. City of Des Moines*, 246 Iowa 249, 257–58, 67 N.W.2d 542, 546 (1954). Iowa Code section 414.3 requires that zoning regulations "shall be made in accordance with a comprehensive plan." The requirement of a comprehensive plan is found in the zoning law of those states that have taken the standard state zoning enabling act as their model. Vestal, *Iowa Land Use and Zoning Law* § 3.01(d) (1979). The act was first drafted in the early 1920s and was adopted in whole or in part by thirty-five states. *Id.* at n. 19. The act did not define the term comprehensive plan.

A majority of courts in states where zoning must be "in accordance with a comprehensive plan" hold a plan external to the zoning ordinance is not required. 2 *The American Law of Real Property*, Planning and Zoning § 12.02 (1991). However, an increasing number of legislatures specifically require that a plan be adopted. *Id.* The "comprehensive plan" requirement was imposed to prevent piecemeal and haphazard zoning. Standard State Zoning Enabling Act (United States Department of Commerce, § 3 n. 22 (1922)). The word "plan" connotes an integrated product of a rational process; the word "comprehensive" requires something beyond a piecemeal approach. *Kozesnik v. Township of Montgomery*, 24 N.J. 154, 166, 131 A.2d 1, 7 (1957). We have suggested the purpose of a comprehensive plan is "to control and direct the use and development of property in the area by dividing it into districts according to present and potential uses." *Plaza Recreation Ctr. v. Sioux City*, 253 Iowa 246, 258, 111 N.W.2d 758, 765 (1961); *see also Bell v. City of Elkhorn*, 122 Wis.2d 558, 564–65, 364 N.W.2d 144, 147 (1985) (list of objectives sought to be achieved through development of a comprehensive plan).

Iowa Code section 358A.5, relating to county zoning, contains the identical requirement. In discussing this requirement, we stated: "If the Board gave full consideration to the problem presented, including the needs of the public, changing conditions, and the similarity of other land in the same area, then it has zoned in accordance with a comprehensive plan." *Montgomery v. Bremer County Bd. of Supervisors*, 299 N.W.2d 687, 695 (Iowa 1980). The Iowa Court of Appeals commented, "nothing in Chapter 358A requires a county to reduce a comprehensive plan to written form." *Webb v. Giltner*, 468 N.W.2d 838, 840 (Iowa App.1991). The comprehensive plan requirement is intended to ensure the county board acts rationally rather than arbitrarily in exercising their delegated zoning authority. *Id.* As suggested by the court of appeals, the generic standard in *Montgomery* would apply when a county either has no individualized comprehensive plan or has not reduced that plan to writing. *Id.*

The Wolfs challenged the 1978 zoning ordinance in both the action brought by the City in 1987 and in their action against the City in 1990. In the 1991 decree, the district court concluded that a separate formal document called a comprehensive plan was not required to validate the City's zoning ordinance. Nevertheless, the court found "there is no evidence to indicate that the City engaged in any rational planning before the adoption of the 1978 ordinance."

This declaratory judgment action was tried as an equitable action. Our

scope of review is de novo. Iowa R.App.P. 4. In our de novo review of the evidence, we carefully examine the zoning ordinance and zoning map, the testimony of witnesses who were involved in the adoption of the ordinances, and other relevant evidence.

■ Prior to the adoption of the 1978 zoning ordinance, Ely had established a planning and zoning commission. Under a 1976 ordinance, the Ely planning and zoning commission had authority to make such surveys, studies, maps, or plans which the commission believed bears a relation to the general comprehensive plan. The ordinance provided for the preparation of a comprehensive plan and directed that the commission

> make careful and comprehensive studies of present conditions and future growth of the city and with due regard to its relation to neighboring territory. The plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the city and its environments which will, in accordance with the present and future needs, best promote health, safety, morals, order, convenience, prosperity, and general welfare, as well as efficiency and economy in the process of development.

It further provided that after adoption of a comprehensive plan by the commission an attested copy of the plan shall be certified to the council. The council could then approve the plan, and it would constitute the City's comprehensive plan. The City council could not take action until it had received the final report from the zoning commission. Iowa Code § 414.6 (1977).

Contrary to the statutory and ordinance requirements, no comprehensive plan was developed by the commission and appropriately presented to the council. At trial, Thomas M. Tjelmeland, the mayor of Ely, admitted he was unaware of any written criteria used in development of the 1978 zoning ordinance. He testified the comprehensive plan consisted of the City's zoning ordinance combined with its zoning map. There were no other documents that he relied upon in interpreting the zoning ordinance.

A councilman of the City testified that no single person had been designated as administrative officer responsible for the administering of the zoning ordinance. The mayor and members of the Ely council would bring zoning matters to the entire council on an ad hoc basis. The councilman further testified that, in making decisions as to whether a specific use is allowed in a specific zone, he just listened, and if he thought it was right, he would go along with it. He had not heard of a comprehensive zoning plan.

The City offered evidence that, in June of 1975, the Linn County Regional Planning Commission (county commission) prepared a housing and community development study and a Linn County regional land use policy plan. The study recommended Ely and other nonmetropolitan cities use the plan as a guide for future growth and development. Although mayor Tjelmeland represented the City of Ely on the county commission, he testified he was unaware of any studies conducted when the 1978 zoning ordinance was drafted. He was unaware of any writing that set forth any proposed or future land use. He testified the 1975 regional housing and land use policy plans were not used in any of Ely's planning or zoning decisions.

The 1978 zoning ordinance was developed by combining different sections and provisions of two or more "model" municipal zoning ordinances. Throughout the ordinance, specific provisions of the model ordinances were deleted, marked "omit" or additional provisions were added in longhand. The ordinance established seven districts for specific use: agricultural (A–1), residential (R–1, R–2, R–3), commercial (C–1), industrial (M–1), and public (P–1). The ordinance generally regulates the districts by identifying the principal permitted uses and special uses for each district. The special uses are allowed only if the board of adjustment issues a special permit. The zoning ordinance refers to a "zoning district map" that is made a part of the ordinance.

At least two, and possibly four, different zoning maps have been identified as the official city zoning map. The City offered a crayola-colored zoning map as the official zoning map. This map was different than the zoning map identified as Ely's official zoning map in the first trial in 1989. One of the maps indicates the Wolfs' "tract C" was agricultural; the other indicates it was residential. The City acknowledges the 1978 zoning ordinance and zoning map have not been officially amended, changed, modified, or repealed.

Ely's zoning ordinance and zoning map do not suggest an integrated product of rational planning. The ordinance contains glaring omissions and serious structural problems. Although a significant portion of the land within the city limits is identified as agricultural land, the zoning ordinance makes no provisions regulating its use. Some words and terms that are defined in the ordinance are not used later in the ordinance. Extensive provisions relating to mobile homes are included in the definition section. Under the ordinance provisions, mobile homes are permitted only in an approved mobile home park. However, a mobile home park is not a permitted use or special use in any of the seven districts. Junkyards are specifically defined, although they are not a permitted use or special use in any of the districts. In one part of the zoning ordinance, the City prohibits fences of over five feet; in another part it requires a six-foot fence. The ordinance has twenty-eight separate parking classes for off-street parking, although the population of Ely was 275 in 1970 and 425 in 1980.

The structural problems in the zoning ordinance obviously arose from a careless combining of two or more model ordinances. Although such a clip-and-paste ordinance could produce a valid ordinance if carefully and rationally prepared, here the structure and content of the ordinance suggests a careless and irrational process was employed.

Other evidence demonstrates the City's failure to adopt the zoning ordinance in accordance with a comprehensive plan.

Studies and plans developed by the county commission in 1975 were not considered by the council. The Ely Planning Commission failed to comply with the City ordinance requirement that a comprehensive plan be certified to the council as an attested copy of the plan. Although city records indicate the commission had presented a proposed zoning ordinance and zoning map in 1977, the records do not identify the proposed ordinance and map. Because the official zoning map was not clearly identified, there was confusion as to the limitation of uses to be applied to certain parcels of land. Amendments or changes to the ordinance and zoning map were reported in the city records, but council approval was made by resolution, contrary to ordinance and statutory requirements.

Judge Kilburg in his 1989 decree found there was no comprehensive plan that would establish a basis for excluding all junk or salvage yards within Ely's city limits. Based upon these deficiencies in the ordinance, the court stated: "It is unfair to state that the City of Ely had at the time of its passage, or has since had, a comprehensive plan in the M–1 district." The court's observations have application to the entire ordinance.

Judge Horan in his 1991 ruling and judgment found the evidence presented at trial indicates "very little planning at best." We agree with the court's conclusion that the evidence failed to show any rational planning before the adoption of the 1978 zoning ordinance. We, like the district court, find the City failed to comply with the requirement that zoning regulations be made in accordance with a comprehensive plan. Therefore, we need not address the Wolfs' argument that the ordinance validity issue was litigated by the parties and decided by the court in its 1989 decree.

IV. *Affirmative Defense.*

We have also considered the affirmative defense of estoppel raised by the City. The doctrine of estoppel is not favored in the law and must be proved by clear, convincing and satisfactory evidence. *Anita Valley, Inc. v. Bingley,* 279 N.W.2d 37, 41

(Iowa 1978). Upon our review of the record, we find the City has failed to meet its burden of proof upon this issue.

We therefore affirm the judgment of the district court.

AFFIRMED.

All Justices concur except LARSON, J., who dissents and is joined by HARRIS, J.

LARSON, Justice (dissenting).

I dissent from Division III and the result.

Ely is a small town with limited financial resources, trying to maintain the aesthetic quality of a rural Iowa community. This ruling unnecessarily frustrates that effort.

Our cases hold, and the majority concedes, that no formal plan is required to satisfy the requirement of a comprehensive plan as a prerequisite to zoning.

Ely's zoning ordinance *is* a part of a "comprehensive" plan. Despite the informality of the plan, any reasonable reading of the town's ordinances, maps, and resolutions (which our cases say may constitute a comprehensive plan) should make it clear: a junkyard in the middle of town was not to be a part of its future development.

I would reverse and remand.

HARRIS, J., joins this dissent.