**UNITED STATES of America**

v.

**Steve L. GILLEY and George Brown.**

**No. CR 485–08.**

United States District Court,
S.D. Georgia,
Savannah Division.

April 30, 1985.

Fred Kramer, Asst. U.S. Atty., Savannah, Ga., for the U.S.

Davis Cohen, Federal Public Defender, Savannah, Ga., for Gilley.

James K. Jenkins, Savannah, Ga., for Brown.

## ORDER

ALAIMO, Chief Judge.

Brown and Gilley have moved this Court, pursuant to the exclusionary principle of *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), to suppress evidence seized during law enforcement officers' search of a residence in Fort Stewart, Georgia. On April 5, 1985, during a pretrial hearing in this case, the Court heard testimony regarding the factual basis of this motion. Having considered the evidence and the applicable precedent, the Court is of the opinion that the motion

should be granted as to Brown and denied as to Gilley.

**FACTUAL BACKGROUND**

The challenged search occurred on February 1, 1985, in the residence of United States Army Specialist Fourth Class Marie Rossetti. Specialist Rossetti lives in soldiers' family quarters on the Fort Stewart Military Reservation in the Southern District of Georgia.

Prior to the search, Army Criminal Investigation Division ("CID") agents, working with the Liberty County Sheriff's Office, had received information from an assertedly reliable source that individuals named "Steve" and "George" had been soliciting cocaine purchasers in Hinesville, Georgia, near Fort Stewart. The officers' information indicated further that Steve and George had one pound of cocaine stored in their automobile, a 1980 Ford Fairmont. On February 1, 1985, officers observed a meeting between Steve, George and the informant. Subsequently, the officers followed the suspects in the Ford Fairmont to the Fort Stewart quarters of Specialist Rossetti.

Later that day, CID Agent Chang contacted Specialist Rossetti at her workplace, the Fort Stewart Motor Pool. At the investigator's request, Rossetti went to the base CID office for questioning regarding her association with Steve and George. Rossetti explained that her boyfriend's name was Steve and that he had recently arrived in the area from Florida. She had met a "George" with Steve that very afternoon when she went to her quarters for lunch. The individuals to whom Rossetti was referring are the current defendants.

Agent Chang related to a surprised Specialist Rossetti the suspicions concerning cocaine transactions by Gilley and Brown. At the agent's request, Rossetti executed a written consent for officers to search her residence. Rossetti wanted to be at her home during the search, so she left the CID office with Agent Chang.

CID Agent Moran was already at the Rossetti quarters when Agent Chang and Rossetti arrived. Armed with Rossetti's consent, Moran and other agents entered the front door of the house to conduct the search. They neither knocked nor announced themselves before entering. The agents discovered Steve Gilley and George Brown in the living room. The room smelled of burning marijuana. On the sofa beside Gilley sat a plastic tray which held cigarette rolling papers and a quantity of suspected marijuana. Gilley and Brown were promptly arrested and removed from the house. They were apparently detained just outside the house during the search. The defendants were not informed that the officers were about to search the house pursuant to their host's consent.

Among the first items searched was a gray cloth travel bag which sat unconcealed on the living room floor, near where Gilley and Brown had been sitting. The bag's three storage compartments were zipped shut. Agent Moran testified at the pretrial hearing that the bag attracted his attention because it did not "belong" among the furniture and fixtures in the living room. Rather, the bag's portable character and location in the room indicated to Moran that it had been brought into the room recently. These observations, Moran testified, suggested that the bag belonged to one of Rossetti's guests, Gilley or Brown. The bag did, in fact, belong to Brown. Although Rossetti, Gilley and Brown were all nearby, Agent Moran made no attempt to identify the bag's owner.

Agent Moran unzipped one of the bag's compartments. Along with the clothing and other travel needs in it, he found one pound of suspected marijuana, approximately one ounce of suspected cocaine and a variety of drug paraphernalia. The contraband was seized. The Government intends to offer it in its case-in-chief against Brown and Gilley.

**DISCUSSION**

**A. Brown's Motion to Suppress**

Brown has conceded that he lacks standing to object to the search of the Rossetti premises in general. His motion seeks

only suppression of items seized from his gray travel bag.

■ The CID agents searched Rossetti's residence, including Brown's travel bag, without a judicial warrant. It is basic Fourth Amendment jurisprudence that searches conducted without prior approval by a judge or a magistrate are *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions. *Colorado v. Bannister*, 449 U.S. 1, 2–3, 101 S.Ct. 42, 42–43, 66 L.Ed.2d 1, 3 (1980); *United States v. Satterfield*, 743 F.2d 827, 843 (11th Cir.1984). To avoid suppression of evidence seized during a warrantless search, the Government must show that the search fell within one of the exceptions to the warrant requirement. *See Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409, 413 (1970) (stating that burden rests on Government to show that warrantless search falls within an exception).

The Government asserts that Specialist Rossetti's consent authorized the search of the house and all effects in it, including the travel bag, without a warrant. The Supreme Court has indeed recognized that officers may conduct a warrantless search pursuant to a voluntary and authoritative consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 860 (1973). Brown responds that Rossetti neither owned nor had authority over his travel bag. She, therefore, could not effectively consent to its search.

In *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court discussed the power of an individual to give effective consent to a search of property belonging to another. Matlock resided in a house leased by a Mr. and Mrs. Marshall. He shared a bedroom in the house with the Marshalls' daughter, Mrs. Graff. Officers investigating a bank robbery charge against Matlock visited the house and received Mrs. Graff's permission to search for evidence. The officers discovered $4,995 in cash, thought to be part of the loot, in the closet of the bedroom which Matlock shared with Graff.

The Court concluded that the consent of Graff might be valid against Matlock, stating:

> [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 249–50. In a footnote to this passage, the Court explained that common authority rests on "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7.

■ The Government asserts that Rossetti had access to and control over her quarters and, thus, under *Matlock*, authority to consent to their being searched. This cannot be doubted. However, "authority to consent to search of a general area ... cannot be thought automatically to extend to the interiors of every enclosed space capable of search within the area." *United States v. Block*, 590 F.2d 535, 542 (4th Cir.1978). Guests and co-residents in a house may have privacy interests in specific property which cannot be waived by a third party's consent to a search of the general premises.

■ An individual may have a reasonable expectation of privacy in the contents of a travel bag which he has taken to the home of another person. The Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view. *United States v. Ross*, 456 U.S. 798, 822–23, 102 S.Ct. 2157, 2171–72, 72 L.Ed.2d 572, 592 (1982). Suitcases, footlockers and briefcases are fre-

quently the objects of a man's highest privacy expectations. *United States v. Block, supra,* at 541; *see also United States v. Freire,* 710 F.2d 1515, 1519 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984) ("Few places outside one's home justify a greater expectation of privacy than does a man's briefcase."). The expectations of privacy in such effects may be at their most intense when they are deposited temporarily in a place under the general control of others. *Block, supra,* at 541.

■ Brown did nothing which diminished his natural expectation of privacy in the contents of his travel bag. The bag was zipped shut when discovered by Agent Moran. It was found in the house's common area, the living room, which appears to have been the only part of the house to which Brown had access. He had not been an overnight guest at the Rossetti home and, thus, would not have put his personal effects into a bedroom. Brown kept the bag within the ambit of his physical control, rather than storing it in his automobile. He did not permit Rossetti or Gilley to enter or use the bag. From all indications, he maintained the travel bag as a private enclave during his visit at the Rossetti residence.

Because Brown retained a privacy interest in the bag, Rossetti could have consented to a search of it only if she had "joint access or control" over it, in addition to her authority over the house in general. *See Matlock, supra.* This analysis was applied to similar facts in *United States v. Block, supra.* Officers in *Block* received Mrs. Block's consent to conduct a general search of the Block residence. The officers discovered a locked footlocker in the bedroom occupied by Mrs. Block's son. Mrs. Block explained that the footlocker belonged to her son and that she did not have a key to it. The officers broke the lock and examined the footlocker's contents. The Court concluded that Mrs. Block's access to and authority over her son's bedroom enabled her to consent to a search of the room. 590 F.2d at 541. However, this authority

did not extend to the footlocker. Mrs. Block did not share access to or use of the footlocker with her son and, thus, could not validly consent to a search of the footlocker. *Id.* at 542.

Similarly, the Ninth Circuit held in *United States v. Wilson,* 536 F.2d 883, 884–85 (9th Cir.1976), *cert. denied,* 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976), that, absent evidence of common use, an apartment resident lacked authority to consent to the search of suitcases left in her apartment by three guests. *Accord United States v. Poole,* 307 F.Supp. 1185, 1187–90 (E.D.La.1969).

The result in this case follows *Block* and *Wilson.* Brown had an expectation of privacy in the contents of his closed travel bag. Rossetti had not been authorized by Brown to open or use the bag, and she had not in fact opened the bag. It is not clear that Rossetti even noticed the bag in her living room prior to the search. As Rossetti lacked "common authority" over the bag, her consent was ineffective to authorize a search of it.

■ *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), established that evidence need not be suppressed if it was discovered by officers acting in good faith reliance on the validity of a search warrant, even if the warrant is subsequently found to have been invalid. This principle arguably applies to the consent search, making suppression improper where an officer has searched in good faith reliance on the validity of a consent which he has received.

Even if *Leon*'s good faith exception were applied to consent searches, suppression would nonetheless be required in the case at bar. Before he searched the bag, Agent Moran correctly deduced that it belonged to Gilley or Brown, rather than to Rossetti. Having so concluded, Moran had little basis for reasonably believing that Rossetti had authority to consent to a search of the bag. He should, rather, have sought the consent of the believed owners of the bag—Gilley and Brown—who were on the scene during the search. *See Unit-*

ed States v. Impink, 728 F.2d 1228, 1234 (9th Cir.1984) (stating that the validity of a third-party consent is less certain where the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest in the item to be searched).

The CID agents searched Brown's travel bag without a warrant. The Government in the case at bar has failed to show that the challenged search fell within the consent exception, or any other exception to the warrant requirement. For this reason, Brown's motion to suppress evidence seized from the bag shall be granted.

### B. Gilley's Motion to Suppress

Gilley moves to suppress all items found in the search of Specialist Rossetti's quarters, including the items seized from Brown's travel bag. Gilley contends that Rossetti's consent was not voluntarily given; therefore, it did not provide a legitimate basis for the search. Because Gilley lacks standing to challenge the search, the Court shall deny his motion.

To prevail in a claim that evidence was seized in violation of the Fourth Amendment, the defendant bears the burden of demonstrating his legitimate expectation of privacy in the areas searched. *United States v. Baron-Mantilla*, 743 F.2d 868, 869 (11th Cir.1984), *citing Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387, 393 n. 1 (1978). The legitimacy of a defendant's privacy interest is determined by the totality of circumstances surrounding the defendant's relationship with the place searched. *Id.* at 870. An individual can show the requisite privacy interest in a residence by showing that he either owned or leased the premises or that he had an unrestricted right of occupancy, custody or control over them. *Id.; United States v. Bachner*, 706 F.2d 1121, 1126 (11th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 247, 78 L.Ed.2d 235 (1983).

Gilley failed to prove a connection to the Rossetti residence sufficient to justify a reasonable expectation of privacy in it.

Rossetti testified that on January 30, 1985, two days before the search, she and Gilley agreed that Gilley would move into her home. However, the totality of circumstances do not indicate that such an agreement had been effectuated on February 1. Rossetti had not notified the Fort Stewart housing authorities that Gilley had become a resident of her quarters. This fact becomes telling when one considers that Rossetti *had* given the required notification as to her sister and niece who lived with her. It was not shown that defendant had a key to the house or that he had ever visited the house except by Rossetti's invitation. Nor was there any evidence that Gilley had moved his personal effects to Rossetti's home.

Moreover, it is plain that Gilley and Rossetti's personal relationship had been unsettled in the time preceding the search. Rossetti testified that she and Gilley had reconciled in January, 1985, after having broken off their relationship. In the weeks before the search, Gilley had visited Rossetti's home only occasionally, staying on each visit for only one or two days. In light of this history, the Court is not convinced that Gilley could have been transformed from a guest to resident by the mere exchange of words.

On February 1, 1985, Gilley had neither a property interest in the Rossetti quarters nor an unrestricted right of occupancy and control over them. Rather, the Court concludes that he was an invitee in the house. As such, Gilley lacked standing to challenge CID officers' search of the house.

### CONCLUSION

Brown's motion to suppress is GRANTED as to all items found during the CID officers' search of Brown's gray travel bag on February 1, 1985. Gilley's motion to suppress is DENIED.