Stacy BAKER, On Her Own Behalf and On Behalf of All Others Similarly Situated, Appellants,

v.

WEBSTER COUNTY, IOWA, Appellee,

Iowa State Association of Counties, et al., Intervenors–Appellees.

No. 91–598.

Supreme Court of Iowa.

July 22, 1992.

Kelley A. Rice and Thomas A. Krause of Legal Services Corp. of Iowa, Des Moines, for appellants.

Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellees.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This case concerns efforts by parents to secure county-based programming and services for their profoundly retarded adult daughter. It has been certified as a class action. As originally pleaded and tried, the plaintiff alleged both substantive and procedural due process deprivations. As the case developed, however, the district court ruled (and plaintiff now concedes) that the services demanded were not the county's duty to provide. Given this substantive decision, the question remains whether the district court erred by not addressing plaintiff's procedural due process claim. Finding no error, we affirm.

The facts are largely undisputed. Plaintiff Stacy Baker is a woman in her mid-twenties who has been severely handicapped and profoundly retarded since birth. Testing reveals her mental age to be approximately two-and-one-half years. Throughout her life she has been cared for by her parents in their home in Fort Dodge, Iowa.

Stacy's parents have made every effort to obtain educational programming suited to her needs. To a great extent they have succeeded. From age nine onward, she attended special education classes in the Fort Dodge public schools. When she reached age twenty-one, however, the public school's legal obligation to continue her education ended. Two one-year extensions were conditioned upon Stacy's preparation for transition into a vocational training center.

A four-week evaluation at a Fort Dodge sheltered workshop for handicapped persons convinced the staff there that Stacy's profound disabilities prevented her from participating in its employment and social programming. The area education agency then notified Stacy's parents that she could

continue her public school special education at Fair Oaks Middle School on a tuition basis. The tuition was $96 per day.

Stacy's parents sought county funding for the Fair Oaks tuition. They appeared three times before the Webster County Board of Supervisors, and their lawyer met with the board's attorney. The board eventually decided the county would pay $200 per month toward Stacy's tuition. This was the amount customarily paid for community-based services for other mentally retarded adults in the county.

Convinced that their daughter needed more intensive programming than the county was willing to finance, suit was brought pursuant to 42 U.S.C. section 1983 (1988). The suit sought declaratory and injunctive relief concerning the scope of the county's responsibilities under Iowa Code section 222.60. That statute provides:

> All necessary and legal expenses for the cost of admission or commitment or for the treatment, training, instruction, care, habilitation, support and transportation of patients in a state hospital-school for the mentally retarded, or in a special unit, or any public or private facility within or without the state, approved by the director of the department of human services, shall be paid by either:
>
> 1. The county in which such person has legal settlement as defined in section 252.16.
>
> 2. The state when such person has no legal settlement or when such settlement is unknown.

Iowa Code § 222.60 (1989). Plaintiff also demanded written guidelines and other procedural protections consistent with the county's obligation under state law, and sought payment for tuition at Fair Oaks Middle School, unspecified damages, and attorney fees.

While suit was pending, Stacy received a one-month evaluation at the Woodward School for the Mentally Retarded. That evaluation recommended her placement in an intermediate care facility for the mentally retarded (ICF–MR). Two such facilities were found that could accommodate her, one in Charles City and another in Emmetsburg. The county agreed to pay for Stacy's residence at either one. Stacy's mother, however, wished to keep Stacy at home in Fort Dodge. She demanded that the county build and staff an ICF–MR in Fort Dodge for Stacy and others similarly situated.

Stacy subsequently filed a supplemental petition abandoning her claim for compensatory damages. The petition also clarified her assertion that, since her public education had ended and there existed no programs near Fort Dodge to serve the needs of mentally retarded adults like her, the county was obligated to provide such services. Failure to do so, she claimed, denied her "entitlement to treatment and habilitation consistent with qualified professional judgment in violation of Iowa Code § 222.-60." She further asserted that the county's inaction violated her substantive and procedural due process rights under the fifth and fourteenth amendments to the United States Constitution. Her prayer for relief claimed that entitlement under section 222.60 "includes but is not limited to a full range of services including identification, evaluation, referral, programming and placement consistent with qualified professional judgment."

By the time the case came to trial, Stacy's desire for local services had been fulfilled by the construction of a new ICF–MR facility at a Fort Dodge hospital. The legal question concerning the county's duty under section 222.60 remained, so the court did not dismiss the suit for mootness. It concluded that section 222.60 obligates the county to pay for, but not provide, mental retardation services. Because the record contained no proof that the services Stacy sought were approved by the department of human services (DHS), see Iowa Code § 222.60, her substantive claim against the county failed. The court then reasoned it had no obligation to speculate on the due process rights of applicants for approved services. It is from this ruling that plaintiff appeals.

■ I. This declaratory judgment action was tried at law and, thus, our review would ordinarily be for legal error. *Citi-*

*zens Sav. Bank v. Sac City State Bank,* 315 N.W.2d 20, 24 (Iowa 1982). Because constitutional issues are raised, however, we review de novo the factual basis for the court's decision. *Federal Land Bank v. Arnold,* 426 N.W.2d 153, 156 (Iowa 1988). Here the facts are not disputed, so our decision ultimately turns on whether the court correctly applied the law, both statutory and constitutional.

II. As noted by the district court, section 222.60 is part of a comprehensive legislative scheme to provide assistance to Iowa's mentally retarded citizens. *See generally* Iowa Code ch. 222 (1989). The statute focuses on "hospital-schools" located at Glenwood and Woodward. Iowa Code § 222.2(1). The state is divided into two districts, with one school in each district. Iowa Code § 222.6. Unless the DHS administrator for mental retardation services orders otherwise, all admissions or commitments of mentally retarded persons shall be to the hospital-school within his or her district. Iowa Code § 222.6. If the hospital-school within the resident's district proves inadequate, however, a county board of supervisors shall arrange for the retarded individual's placement in "any public or private facility within or without the state, *approved by the director of the department of human services,* which offers appropriate services for such persons." Iowa Code § 222.13 (emphasis added).

The record before us reveals that Stacy did not apply for admission to one of the hospital-schools. Nor did she apply to any other facility approved by the director of DHS. Rather, her mother insisted that Webster County furnish a local program to serve Stacy's many needs. The district court ruled that the county's obligation under section 222.60 to pay for *approved* placements did not create an affirmative obligation to furnish mental retardation services at the local level. It ruled that the legislative scheme contemplates two roles for the players involved: the state as provider, and the county as payor.

On appeal, Stacy does not quarrel with the court's denial of her claim of sub-

stantive entitlement to the mental retardation services she demanded. She merely insists that she was denied procedural due process in her quest for those services. The district court rejected this procedural due process claim and, we think, rightly so.

Fundamental to the validity of any due process claim is a constitutional or statutory entitlement. *City of Clinton v. Loeffelholz,* 448 N.W.2d 308, 311 (Iowa 1989) (citing *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570, 578–79 (1972), and *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548, 556–57 (1972)). Here the district court noted that chapter 222 "unmistakably creates a property right in mental retardation services." *See Hanson v. Clarke County, Iowa,* 867 F.2d 1115, 1120 (8th Cir.1989) (Iowa's mental retardation statutory scheme creates "substantive right to appropriate care and treatment."). This right is not unlimited, however. Its dimensions are defined, not by an individual's wishes, but by state law. *Roth,* 408 U.S. 564 at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

State law does not require the county to furnish the services Stacy and the other class members demanded. *See Hanson,* 867 F.2d at 1115 (no substantive right to "optimal" care, only appropriate care and treatment). Stacy now concedes this but nevertheless insists that the county must provide written application forms, written guidelines, written notice of decision, and written notice of appeal rights to anyone applying for payment under section 222.60. The weakness in her argument is that neither Stacy, nor anyone in the class she represents, has applied for, or been denied, services authorized by section 222.60.

This is not a case, as Stacy contends, in which procedural safeguards must be in place regardless of the "ultimate outcome of a hearing." *Fuentes v. Shevin,* 407 U.S. 67, 87, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556, 574 (1972). Nor is this a case where a party who is generally eligible for a benefit may insist on minimal due process. *Cf. Daniels v. Woodbury County, Iowa,* 742 F.2d 1128, 1132 (8th Cir.1984) (proper in-

quiry is whether plaintiff has legitimate claim of entitlement to benefit requested). Here no deprivation of a constitutionally or statutorily protected interest has been identified. *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 114 (1990) (noting that purely procedural due process safeguards rest on deprivation of protected interest). Plaintiff cites us to no authority which would require the county to provide an orderly procedural means of applying for services which, by law, it is not obligated to provide.

Once the court correctly determined that no substantive due process deprivation under section 222.60 existed, the court had no further obligation to address plaintiff's procedural due process claim. *Hanson,* 867 F.2d at 1120. While the statute may give rise to due process claims for authorized services, the district court wisely recognized that such services were not the object of plaintiff's petition. We therefore affirm the judgment of the district court denying plaintiff's claim for both substantive and procedural due process under 42 U.S.C. section 1983.

AFFIRMED.