**David SHEDLOCK, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR POLK COUNTY, Defendant.**

No. 94–1257.

Supreme Court of Iowa.

July 19, 1995.

Winston E. Hobson, Des Moines, for plaintiff.

Thomas J. Miller, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., John P. Sarcone, County Atty., and Joseph Weeg, Asst. County Atty., for defendant.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

We granted David Shedlock's petition for writ of certiorari to challenge his punishment for contempt of a protective order issued in connection with his conviction for criminal trespass. Shedlock claims that (1) the court was without jurisdiction to enforce the protective order while he appealed the underlying conviction, (2) the record is insufficient to support a finding of contempt, and (3) the sentence imposed amounts to cruel and unusual punishment. Finding no error, we annul the writ.

Shedlock serves as communications director for the Des Moines chapter of Operation Rescue. In February 1993 he was charged with criminal trespass and interference with official acts in connection with a demonstration at the offices of Planned Parenthood. As a condition of his pretrial release, Shedlock was ordered to have no con-

tact with Jill June, president of Planned Parenthood, as well as other named members of her staff. He was also ordered to refrain from being on the organization's property in Des Moines.

Shedlock was convicted as charged. As part of his suspended sentence and probation, the court ordered him to abide by the protective order. Upon Shedlock's appeal to the district court and, subsequently, to this court, the order was continued as a condition of his appeal bond.

The matter now before us concerns an incident that occurred in May 1994. The facts are largely undisputed. Shedlock was demonstrating on the sidewalk near the Planned Parenthood offices when he decided to "harangue" a member of the staff who was not named in the protective order.[1] His target, Debra Steilin, was a passenger in a car driven by Jill June. While the car was stopped for a traffic signal, Shedlock stuck his head in the car's passenger window and "ask[ed] her to stop working for a child-killing industry." When Shedlock saw that June was the driver, he reportedly withdrew. He then followed the car to the Planned Parenthood parking lot. As the two women left their car and entered the building, Shedlock began shouting at them about repentance and killing. A security guard nearby heard Shedlock say, "Jill, sending us to jail will not stop us." The guard also observed Shedlock stepping on Planned Parenthood property but believed the trespass was inadvertent.

Based on this record, the court found Shedlock in willful and deliberate violation of the protective order. The court, noting that this was not the first time Shedlock had been found in contempt of the protective order, sentenced him to fifty days incarceration with credit for time served. Upon Shedlock's petition, we granted a writ of certiorari.

Certiorari, being an action at law, is reviewable on assigned error only. *Johnson v. Iowa Dist. Court*, 385 N.W.2d 562, 564 (Iowa 1986). Because Shedlock's third challenge rests on constitutional grounds, we review the facts de novo. *Baker v. Webster County, Iowa*, 487 N.W.2d 321, 323 (Iowa 1992). "[N]o person may be punished for contempt unless the allegedly contumacious actions have been established by proof beyond a reasonable doubt." *Phillips v. Iowa Dist. Court*, 380 N.W.2d 706, 709 (Iowa 1986).

## I. *Jurisdiction.*

Shedlock claims it was unlawful for the court to hold him in contempt because an appeal of the underlying conviction was pending, thereby transferring jurisdiction of the case to the appellate court. The State's only recourse, Shedlock asserts, was to revoke his appeal bond or charge him anew for trespass or some other crime. Like the district court, however, we are convinced the remedies available in these circumstances are not so limited as Shedlock suggests.

It is the general rule that the trial court loses jurisdiction over the merits of a controversy once an appeal is perfected. *Wolf v. City of Ely*, 493 N.W.2d 846, 848 (Iowa 1992). And, as Shedlock rightly notes, our rules of appellate procedure provide for restoration of jurisdiction to the district court in only two circumstances: upon the litigants' stipulation for an order of dismissal or upon the appellate court's order for limited remand. *See* Iowa R.App.P. 12(e), (g).

An exception to the general rule, however, permits the trial court to retain jurisdiction over disputes between the parties which are collateral to the subject matter of the appeal. *In re Estate of Tollefsrud*, 275 N.W.2d 412, 417 (Iowa 1979); *see also Universal Coop., Inc. v. Tasco*, 300 N.W.2d 139, 142 (Iowa 1981); *Wolf*, 493 N.W.2d at 848; *Kirk v. Iowa Dist. Court*, 508 N.W.2d 105, 108 (Iowa App.1993). The exception serves to expedite the resolution of disputes, particularly in probate and domestic relations cases where many matters collateral to those on appeal may surface. *Tollefsrud*, 275 N.W.2d at 417. It is axiomatic that the power of a court to enforce its orders, in the

---

1. Shedlock testified that to "harangue" means to "rebuke and reprove someone to call them to repentance and then to cease and desist and stop supporting abortion or working for abortionists and so forth."

absence of a stay, is essential to the discharge of its duties. *Kirk,* 508 N.W.2d at 108.

■ Here the court's initial authority to issue the protective order stemmed from Iowa Code section 811.2(1)(e) (1993). That section provides that, as a condition of pretrial release, the court may impose such conditions as are reasonably necessary to "assure ... the safety of another person or persons." Iowa Code § 811.2(1)(e). Upon Shedlock's appeal, the court was authorized to condition his release in accordance with the same requirements. *See* Iowa Code § 811.5.

■ It appears that Shedlock's real quarrel with the court's action rests not with its authority to set conditions of release, but with its use of the contempt power to sanction him for their disregard. The argument is wholly unpersuasive. Section 811.2(8), incorporated by reference into the appeal bond provisions of section 811.5, specifically provides that "nothing herein shall limit the power of the court to punish for contempt." *See also LaRue v. Burns,* 268 N.W.2d 639, 642 (Iowa 1978) (court retains inherent power to punish disobedience to its orders). The viability of Shedlock's argument is further weakened by the fact that, had the court revoked his bond on the underlying convictions instead of acting on the contempt citation, Shedlock would have suffered an even lengthier incarceration. Clearly it was within the State's discretion to choose the more beneficent course.

■ Shedlock argues alternatively that the court's action has effectively punished him twice for the same offense. For authority he cites *United States v. Dixon,* 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). In *Dixon,* the Supreme Court held that the double jeopardy clause bars prosecution for a substantive crime when the elements of the offense have already furnished the basis for a finding of contempt of pretrial release conditions. *Id.* at ——, 113 S.Ct. at 2855, 125 L.Ed.2d at 566–67. The case has no application here, however, for the obvious reason that there has been no criminal prosecution for the conduct giving rise to Shedlock's con-

tempt citation. The assignment of error is without merit.

## II. *Sufficiency of the Evidence.*

The protective order at issue directed that Shedlock "have no contact with Planned Parenthood of Greater Iowa, nor contact personally, by telephone, or any other form of communication, with Jill June" and others on her staff. The State's contempt case against Shedlock rested on three pieces of evidence: that on May 10, 1994, Shedlock (1) approached Jill June's car for the purpose of "haranguing" its occupants, (2) set foot on the gravel parking lot behind the Planned Parenthood building, and (3) continued shouting his messages about killing and abortion as June, Steilin, and the security guard entered the facility. Shedlock claims the record is insufficient to support the district court's finding of contempt by the requisite standard of proof beyond a reasonable doubt. *See Matlock v. Weets,* 531 N.W.2d 118, 123 (Iowa 1995). To the contrary, we find substantial evidence in the record to support the court's decision.

The court's ruling plainly gave Shedlock the benefit of the doubt on two pieces of evidence described above. First, the record revealed that June was driving her daughter's car, not her own, when Shedlock approached it at the intersection. This fact, combined with proof that Shedlock stepped back when he recognized June as the driver, led the court to find that the communication was unintended. Second, despite the court's finding that Shedlock stepped on Planned Parenthood property, it credited Shedlock's claim that the trespass was inadvertent, an assertion corroborated by the observation of the security guard.

Shedlock's challenge centers on the court's crucial finding that he communicated with June, contrary to the protective order, when he shouted at all three persons as they entered the building. He asserts that, just because he shouted in June's direction, the court cannot assume the communication was directed at her. Moreover, he complains that the court's ruling unfairly restricts his right to protest without fear that June may

suddenly appear, subjecting him to citation for contempt.

■ Shedlock's argument plainly overlooks testimony that he called out to June by name. Although Shedlock contests this finding, we give great weight to the court's findings on issues of witness credibility. And, as noted by the trial court, even if Shedlock had not mentioned June's name, he was clearly aware that she was one of the individuals within earshot of his message. We concur in the court's reasoning that a communication made to three individuals in the same location at the same time is a communication to "every single one of those persons." In this case that communication demonstrated Shedlock's knowing and willful disregard for the court's order, punishable by contempt.

### III. Sentence.

Finally, Shedlock claims the court abused its discretion—and his constitutional right to be free from cruel and unusual punishment—when it sentenced him to fifty days in jail. He asserts the sentence is unduly harsh. He also claims it is disproportionate to the nonviolent and allegedly victimless conduct in which he engaged.

■ We have historically granted courts wide discretion in the matter of sentencing for contempt. *Newby v. Iowa Dist. Court,* 259 Iowa 1330, 1343, 147 N.W.2d 886, 894 (1967). We will interfere only where that discretion has been clearly abused. *Id.* By that we mean a finding that the court's decision rests on grounds that are unreasonable or untenable, clearly against logic, or founded on erroneous conclusions. *Glenn v. Farmland Foods, Inc.,* 344 N.W.2d 240, 243

(Iowa 1984). We can draw no such conclusion from the record before us.

■ It was within the court's statutory authority to sentence Shedlock up to six months in jail. Iowa Code § 665.4. The sentence he received was well within that limit. The court considered the fact that this was Shedlock's second violation of the same order; that Shedlock's anger at June reveals a lack of self-discipline in keeping his behavior within the court's directive; and that his conduct demonstrates an utter disregard for law and order. The court also noted that its order had been carefully tailored to preserve the status quo and the safety of the State's witnesses pending appeal without unduly curbing Shedlock's First Amendment rights. Shedlock's response, the court observed, was to disrespectfully and contumaciously push the limits of the court's command.

Based on the record before us, we find no evidence of abuse of the court's discretion in sentencing. Measured by constitutional standards, the punishment is neither cruel nor unusual. *See State v. Robbins,* 257 N.W.2d 63, 68 (Iowa 1977) (punishment violates Eighth Amendment if it "inflicts torture or is otherwise barbaric or because it is so excessively severe that it is disproportionate to the offense charged"). Accordingly, we annul the writ.

**WRIT ANNULLED.**