STATE of Iowa, Plaintiff–Appellee,

v.

Krista Renee GRANT, Defendant–Appellant.

No. 99–139.

Court of Appeals of Iowa.

April 28, 2000.

Michael Lanigan, Waterloo, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kimberly Griffith, Assistant County Attorney, for appellee.

STREIT, J.

Guests "are often welcomest when they are gone." William Shakespeare, *The First Part of King Henry the Sixth,* act 2, sc. 2. Lorenzo Dollison found these words ringing true, when faced with houseguests who brought drugs and trouble to his home. In an effort to alleviate this trouble, Dollison sought the help of the police. In a search of Dollison's apartment, the police searched a jacket of one of his guests. Inside, the officers found a large quantity of crack cocaine. The jacket belonged to Krista Grant, who now claims the search violated her Fourth Amendment rights. We agree, finding it was unreasonable under the circumstances for officers to believe Dollison had the authority to consent to all closed containers in the room where Grant was staying. Because the search violated Grant's Fourth Amendment rights, we reverse the conviction, overturn the trial court's denial of her motion to suppress, and remand for further proceedings.

## I. Background Facts & Proceedings.

In the early morning hours of June 16, 1998, Lorenzo Dollison, upset with his houseguests, left his Waterloo apartment and walked down to the local police station. At the station, he told the police a

woman [1] just brought a gun into his home, hid it somewhere inside, and then left with the promise of returning with more. Dollison asked for help in removing the weapon. Officers were dispatched, and Dollison returned home to await their arrival.

A short time later, Dollison greeted the responding officers outside his home and again recounted his story regarding the weapon. After confirming Dollison was the only tenant, officers accompanied him into the apartment. Dollison directed officers to one of the two bedrooms in the apartment. Upon entering the bedroom, the officers were greeted by the defendant, Krista Grant, and her boyfriend, Torrey Brown, lying naked on the bed. Grant and Brown had just arrived in Waterloo from Chicago and were staying with Dollison on a short-term basis.[2] In exchange for Dollison's hospitality, Brown gave him some money for beer and cigarettes, as well as a small amount of crack cocaine. The couple, however, quickly wore out their welcome, and Dollison requested the couple leave on two separate occasions.

Upon rousting the couple from their slumber, the officer instructed the couple to dress and told them they were looking for a gun. The couple admitted seeing the weapon and suggested it may be between the bed's mattress and box spring. The couple offered to assist the police in their search, but an officer ordered them from the room. In searching the room, an officer picked up Grant's jacket and noticed it was unusually heavy and contained a large bulge in one pocket. Fearing it was the weapon,[3] the officer unzipped the pocket and discovered the crack cocaine Brown intended to sell. In an effort to determine

the owner of the jacket, the officer told the couple to get their personal belongings out of the room. In picking up their stuff, Brown told Grant numerous times to get her jacket from the officer. She denied it was her jacket, and the couple left the room leaving the jacket with the officer. The officer arrested the couple for possession of the crack cocaine. The gun, a .22 caliber rifle, was discovered under the bed.

Brown and Grant confessed to possessing the crack cocaine and to knowing the location of the rifle. The State charged Grant with possession with intent to deliver more than five grams but less than fifty grams of crack cocaine while in the immediate possession of a firearm, and a drug tax stamp violation. *See* Iowa Code §§ 124.401(1)(a), 124.401(1)(e) (1997). Grant moved to suppress the admission of the crack cocaine, claiming the officers violated her Fourth Amendment right to be free from unreasonable search and seizure. Grant waived her right to a jury trial and agreed to submit the case to the court on stipulated facts. The court received all the depositions, minutes of testimony, and the testimony from the motion to suppress. The court found her guilty of possession with intent to deliver crack cocaine while in immediate possession of a firearm, forgot to specifically deny the motion to suppress in its findings, and sentenced her accordingly.

Grant appeals, claiming the trial court erred in denying her motion to suppress.

## II. Preservation of Error.

Grant filed her motion to suppress on November 18, 1998. There was no ruling

---

1. Although Dollison was rather nonspecific as to the identity of the woman, she was actually romantically involved with Dollison, was in the apartment earlier in the evening, and occasionally stayed with Dollison at his apartment.

2. Brown was sent to Waterloo by a drug connection to sell a large quantity of crack cocaine. Grant accompanied him, serving as the vessel for hiding the drugs.

3. In the course of Dollison's narrative at the police station, there was a miscommunication as to the type of gun involved. Dollison said he told the officer the gun was a .22 caliber rifle. The officer, in dispatching a unit to Dollison's apartment, described the weapon as a .22 caliber pistol.

on the motion to suppress prior to the bench trial on the merits of the case. On January 8, 1999, Grant appealed her conviction and sentence. After the appeal was filed, her appellate counsel filed a motion in district court seeking a ruling on the motion to suppress. On June 28, 1999, the court entered a ruling denying the motion to suppress.

It is clear the district court did not have jurisdiction to address the motion to suppress. As a general rule, a district court loses jurisdiction over the merits of a controversy once the notice of appeal is perfected. *Shedlock v. Iowa Dist. Ct.,* 534 N.W.2d 656, 658 (Iowa 1995). The district court retains jurisdiction only as to issues collateral to and not affecting the subject matter of the appeal. *Waterhouse v. Iowa Dist. Ct.,* 593 N.W.2d 141, 142 (Iowa 1999). Here, the issue addressed in the ruling entered after the appeal was filed mimics the issue raised on appeal. Because the district court lacked jurisdiction to further address the motion to suppress, we do not consider the court's June 1999 ruling.

It is quite clear, however, that by proceeding to the trial on stipulated facts, the court implicitly overruled the motion to suppress. The motion to suppress was to be ruled on in conjunction with the court's finding of guilt but was overlooked in the court's written findings. Furthermore, the State does not allege Grant failed to preserve error. Rather, the State concurs the issue was properly preserved for appellate review. We, therefore, hold the issues raised by the motion to suppress are properly before us.

### III. The Search.

Grant first contends the search of the bedroom was unreasonable under the Fourth Amendment. She claims she had a

privacy interest in the bedroom and the officers were not operating under any legitimate exception to the warrant requirement.

### A. Standard of Review.

When assessing an alleged violation of a constitutional right, we review de novo the totality of the circumstances as shown by the entire record. *State v. Breuer,* 577 N.W.2d 41, 44 (Iowa 1998). We consider both the evidence presented during the suppression hearing and that introduced at trial. *State v. Jackson,* 542 N.W.2d 842, 844 (Iowa 1996).

### B. The Bedroom.

Grant contends, because she had a privacy interest in the bedroom and the owner of the home had no authority to consent to the search, her Fourth Amendment rights were violated. The Fourth Amendment to the United States Constitution secures the right of the people to be free from unreasonable government searches.[4] U.S. Const. amend. IV. The Fourth Amendment, however, is not a general societal protection, but rather "a personal right that must be invoked by an individual." *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373, 379 (1998). The extent of protection it affords an individual depends largely on the location of the person seeking its safeguards. *Id.* at 88, 119 S.Ct. at 473, 142 L.Ed.2d at 379. The capacity to invoke the protections of the Fourth Amendment depends "upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978). It is incumbent upon the defendant to show she had a legitimate

---

4. Grant alleges the search violated both the Fourth Amendment to United States Constitution and article I, section 8, of the Iowa Constitution. Because, "the language of those clauses is substantially identical and we have consistently interpreted the scope and

purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment" we will address her arguments jointly. *State v. Showalter,* 427 N.W.2d 166, 168 (Iowa 1988).

expectation of privacy in order to litigate the lawfulness of the government search. *State v. Osborn*, 200 N.W.2d 798, 803 (Iowa 1972). A legitimate expectation of privacy in an invaded place, however, is not so narrowly construed as to mean only a person's home. Rather, even an overnight guest has a legitimate expectation of privacy in the host's home. *Minnesota v. Olson*, 495 U.S. 91, 99–100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85, 95 (1990). That expectation of privacy, however, is applicable only to the unwarranted actions of government actors. It does not ensure the guest's "possessions will not be disturbed by ... [the] host and those [the] host allows inside." *Id.* at 99, 110 S.Ct. at 1689, 109 L.Ed.2d at 94. Thus, an overnight guest's legitimate expectation of privacy does not vitiate the homeowner's ability to consent to a search of his home. *See United States v. Oates*, 173 F.3d 651, 656 (8th Cir.1999); *United States v. Wright*, 971 F.2d 176, 180 (8th Cir.1992) ("[the homeowner] possessed authority to consent to a search of his own home, including the guest bedroom where [defendant] spent the evening."); *United States v. Salinas–Cano*, 959 F.2d 861, 863 (10th Cir. 1992); *United States v. Isom*, 588 F.2d 858, 860–61 (2d Cir.1978) ("As the lawful tenant, [the homeowner] clearly had authority to consent to a search of her premises, even though a 'guest' was also present."). A consent search of a home is only proper if the police reasonably believed the person granting the police permission to search had the authority to do so. *See Illinois v. Rodriguez*, 497 U.S. 177, 185–86, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 159–60 (1990).

 Grant, as an overnight guest, did have a legitimate expectation of privacy in the Dollison home. Dollison's consent, however, countermands that privacy interest. It is undisputed that Dollison granted the officers permission to search his apartment. *See Oates*, 173 F.3d at 656. Dollison was the sole tenant on the lease and had free access to all rooms in the apart-

ment. *See id.* The room searched was normally Dollison's private bedroom and still contained his personal effects. It could be expected Grant's host would need ready access to the room. *See* 3 Wayne R. LaFave, *Search and Seizure* § 8.5(d), at 796 (3d ed. 1996) ("If, for example, the room contains personal effects of the host which it could be expected the host would want ready access to on a regular basis, this is a factor in favor of upholding the host's consent."). Dollison also requested Grant leave the residence, and she failed to comply. *See Oates*, 173 F.3d at 656; *Isom*, 588 F.2d at 860–61 ("[E]ven if appellant had some right, doubtful at best, as a 'licensee' to countermand [the homeowner's] consent to the search, [the homeowner] had undoubtedly revoked the 'license' by asking appellant to leave her apartment."). Finally, the search was undertaken to ensure Dollison's safe and secure enjoyment of his home. *See* 3 Wayne R. LaFave, *Search and Seizure* § 8.5(d), at 796 (3d ed. 1996) ("If the search was undertaken upon the initiative of the host for reason relating to the host's interest in the safe and secure enjoyment of his premises, then this is a factor in favor of recognizing the host's consent as effective."). Under the totality of the circumstances, we find Dollison had the authority to consent to the search of the bedroom in which Grant was located.

## C. The Jacket.

Grant next claims the trial court erred in denying her motion to suppress because she had a legitimate expectation of privacy in her jacket and the government was not operating under an exception to the warrant requirement.

### 1. The Consent Exception.

 The State first contends the search was permissible under the consent exception to the Fourth Amendment. While one may have the authority to consent to the search of a general area, that authority does not automatically "extend to the interiors of every discrete enclosed space capable of search within the area."

*United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978). Guests in a home retain a privacy interest in their personal items that cannot be waived by their host's consent to search the general premises. *See United States v. Gilley,* 608 F.Supp. 1065, 1068 (S.D.Ga.1985); *see also United States v. Karo,* 468 U.S. 705, 726, 104 S.Ct. 3296, 3309, 82 L.Ed.2d 530, 548–49 (1984) (O'Connor, J., concurring) ("[W]hen a guest in a private home has a private container to which the homeowner has no right of access, ... the homeowner ... lacks the power to give effective consent to the search of the closed container."); *United States v. Salinas–Cano,* 959 F.2d 861, 863 (10th Cir.1992); *United States v. Poole,* 307 F.Supp. 1185, 1189–90 (E.D.La. 1969); 3 Wayne R. LaFave, *Search and Seizure* § 8.5(d), at 799 (3d ed.1996). Therefore, Grant retained a privacy right in her jacket, and Dollison did not have actual authority to consent to the search of the jacket.[5]

 Determining whether a party's consent to a search is valid, however, is not driven solely by whether the party has actual authority to consent to the search. Law enforcement officers may also rely on the apparent authority of the consenting party. For officers to rely on a claim of apparent authority, they must "reasonably (though erroneously) believe that the person who has consented to their" search had authority to do so. *Illinois v. Rodriguez,* 497 U.S. 177, 186, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 160 (1990). However, if the surrounding circumstances raise reasonable doubts as to the authority of the consenting party, officers have an *obligation to make further inquiries* into the precise nature of the situation. *Id.* at 188–89, 110 S.Ct. at 2801, 111 L.Ed.2d at 161; *see · United States v. Salinas,* 959 F.2d at 864; *United States v. Whitfield,* 939 F.2d 1071, 1075 (D.C.Cir.1991) ("The [government's] burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry."); *United States v. Poole,* 307 F.Supp. at 1190. Without further inquiry, the search is unlawful. *Illinois v. Rodriguez,* 497 U.S. at 189, 110 S.Ct. at 2801, 111 L.Ed.2d at 161.

 Upon entering a bedroom the officers believed empty, they immediately encountered a situation fraught with ambiguity. The officers found a couple sleeping naked in the bedroom. The officers did not know the relationship between Dollison and the occupants of the room or which items belonged to which party. It was clear Grant and her companion were guests and, given their state of disrobement, at least some of the clothing in the room belonged to them. The officers, faced with this surprising and somewhat perplexing situation, did not make further inquiry into the circumstances surrounding Grant's stay or the extent of her belongings. Rather, the officers proceeded to remove both Grant and her companion

---

**5.** This case turns squarely on the applicability of the consent exception to the Fourth Amendment. The facts do not intimate nor has the State argued the search-incident-to-arrest exception applies. Initially, the record is not clear whether there was probable cause to justify an arrest for criminal trespass. *See* Iowa Code § 716.7(2)(b) (1997). The record was never adequately developed with regard to the manner in which Dollison requested his guests leave or whether they had sufficient time to exit the residence. Second, the officers were called to the scene not to forcibly eject Grant and her boyfriend, but to remove a weapon from the home. Dollison never requested the officers remove Grant from the apartment or charge her with criminal trespass, and the officers specifically stated there was nothing criminal about Grant's presence in the apartment. Third, we do not find that a search-first-justify-later approach whereby we hypothesize all the potential crimes a defendant *could* have been charged with justifies an invasive search. Finally, even if we were to suppose such an exception was proper, a search incident to arrest is limited to the area within the accused's immediate control. *See State v. Canas,* 597 N.W.2d 488, 492 (Iowa 1999). There is simply no record of Grant's precise location relative to her jacket at the time of the arrest. It would be mere speculation to assume her jacket was in an area within her immediate control.

from the room and began searching.[6] It was only after an officer discovered the crack cocaine did officers inquire into who owned the jacket. Such inquiry was too late. Under the circumstances known to the officers at the time of the search, it was unreasonable to believe Dollison had the authority to consent to all closed containers in the bedroom.

## 2. Abandonment.

 The State next contends because Grant denied ownership of the jacket she fails to have a recognizable expectation of privacy for purposes of Fourth Amendment protection. The Fourth Amendment does not protect voluntarily abandoned property. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668, 687 (1960); *State v. Bumpus*, 459 N.W.2d 619, 625 (Iowa 1990). However, an abandonment of property is not normally construed as voluntary if it was in direct response to an illegal search or seizure. *See e.g., United States v. King*, 990 F.2d 1552, 1564 (10th Cir.1993); *United States v. Brady*, 842 F.2d 1313, 1315 n. 7 (D.C.Cir.1988) ("[A]bandonment will not be recognized when it is the result of illegal police conduct."); *cf. United States v. Roman*, 849 F.2d 920, 923 (5th Cir.1988) (ruling an illegal x-raying of a suitcase did not lead to defendant's abandonment as he was completely unaware of the illegality). In determining the causal nexus between the illegality of a search and the abandonment, we examine the totality of the circumstances including the temporal proximity between the constitutional violation and the abandonment, any intervening circumstances, and the flagrancy of the State's misconduct. *Cf. Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416, 427 (1975) (citations & footnote omitted).

 From the record it appears Grant was aware the officers had found the crack cocaine before they asked Grant and her boyfriend to gather their belongings. Understandably, Grant no longer wanted to be associated with the jacket and refused to acknowledge ownership. The temporal proximity between the illegal search and the subsequent abandonment was nearly instantaneous, and there were no other intervening circumstances. Grant's abandonment of the jacket was directly caused by the illegal search. Therefore, the abandonment was involuntary and cannot be relied on in denying her the opportunity to assert her Fourth Amendment claims.

## IV. Conclusion.

Grant not only had a constitutionally protected right to privacy in her jacket, but the actions of the officers violated that right. The appropriate remedy for such violation is suppression of all evidence directly or indirectly gathered through the search. *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453 (1963). The district court decision denying the motion to suppress and the conviction based thereon is reversed, and a new trial is ordered. We remand to the district court for further proceedings in conformance with this opinion.

**REVERSED AND REMANDED FOR NEW TRIAL.**

All judges concur except MAHAN, J., who dissents.

MAHAN, J. (dissenting).

I respectfully dissent. Grant filed a motion to suppress but did not seek a ruling thereon prior to proceeding to a trial on stipulated facts. It was only after her appeal was filed that appellate counsel filed a separate motion seeking a ruling

---

**6.** We do not intimate the officers were incorrect for removing the occupants from the room or taking steps to insure their own safety. However, after securing the scene, the officers still have the responsibility to inquire as to the possessory interests of particular items easily attributable to the occupants.

from the district court on the motion to suppress. The majority correctly concludes the district court did not have jurisdiction to address the motion to suppress at that time. However, the majority then concludes it is "quite clear" from the record that the district court had previously implicitly overruled the motion to suppress. I disagree.

It is a defendant's duty to seek a ruling on a motion to suppress. That did not happen under this record. Appellate counsel recognized this and attempted to correct the matter after the appeal was filed. This attempt was unsuccessful. I disagree with the majority's conclusion the district court "implicitly overruled" the motion to suppress simply by proceeding to a trial on stipulated facts. It would be more reasonable under these facts to conclude the district court considered the motion withdrawn. I would conclude the issue has not been preserved for review and would affirm the district court.