# IN THE COURT OF APPEALS OF IOWA

No. 14-0067
Filed May 6, 2015

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**MARVIS LATRELL JACKSON,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Robert E. Sosalla, Judge.

Defendant appeals from the district court's denial of his motion to suppress. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Janet M. Lyness, County Attorney, and Anne M. Lahey, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, C.J.**

Marvis Jackson appeals from the district court's denial of his motion to suppress. Jackson maintains the district court wrongly concluded a third party, Gunnar Olson, had apparent authority to consent to the search of Jackson's backpack. In the alternative, he maintains the protections provided by the Iowa Constitution should be applied more stringently, requiring a party who consents to a search to have actual authority to do so rather than apparent authority. Finally, he maintains that if his alternative argument regarding the Iowa Constitution was not preserved, trial counsel was ineffective for failing to properly preserve the argument.

Because we do not believe the circumstances raised reasonable doubt as to whether the backpack was Olson's, we find the officers properly relied on Olson's apparent authority to consent to the search. Additionally, we find the argument regarding the Iowa Constitution was not preserved for our review, and we preserve Jackson's claim of ineffective assistance of counsel for possible postconviction-relief proceedings. We affirm.

**I. Background Facts and Proceedings.**

On December 31, 2012, Iowa City police officers responded to a report that Gumby's Pizza had been robbed by two men, one of whom was armed with a gun. Officers Smithey and Stricker followed the K-9 unit to an apartment building, and noticing a second-floor resident seemed to be intently watching their actions, they decided to make contact with the individual. As the officers approached the door of the apartment, they noticed the interior light had been turned off.

Wesley Turner answered the door when the officers knocked. He told the officers he and his girlfriend, who was also present, lived in the apartment. Turner told the officers their roommate, Olson, was the only other person in the apartment and was sleeping in his bedroom. The officers asked Turner to wake Olson so they could speak to him. Officer Stricker initially spoke with Olson, who stated he had been sleeping in his room since he returned home from work at approximately 9:00 p.m. He denied seeing anything suspicious. When Officer Smithey asked Olson if he could look in his room, Olson stated that upon being awakened to speak to the officers, Olson realized his cousin was also sleeping in Olson's bed. He identified the person in his bed as Marvin, but he could not provide a last name. After further questions, Olson explained Marvin was not technically his cousin. Olson then led the officers to his bedroom.

Officer Smithey observed a male, later identified as Jackson, lying on the bed. Smithey noticed the male was sweating, even though he was shirtless and no one else in the apartment appeared to be sweating. At the officers' request, Olson tried to wake Jackson, which, according to Officer Smithey, "was considerably more difficult than it seemed like it should be." Jackson told the officers his name but claimed not to have any identification with him. Officer Smithey checked the name and found Jackson had an active arrest warrant. Jackson was then handcuffed, removed from the room, and given to other officers to transport.

Officer Stricker asked Olson if he could search the bedroom, and Olson consented. Officer Smithey then began searching the room. He found a backpack near the edge of the closet and opened it. He removed a wallet and a

pair of pants that were wet around the cuffs before finding a black handgun in the bag. He then checked the wallet and saw it contained identification belonging to Marvis Jackson. Officer Smithey stopped the search, took a picture of the weapon while it was still in the backpack, and alerted the other officers they needed to "lock down the apartment" while he applied for a search warrant.

Turner, Miller, and Olson were each taken to the police station for questioning. Turner admitted to participating in the robbery with Jackson. After being confronted with evidence of the gun and Turner's confession, Jackson also admitted participating in the robbery.

Jackson was charged with two counts of robbery in the second degree.[1] Jackson entered not-guilty pleas to each of the charges and filed a motion to suppress, asserting Olson did not have the authority to consent to the search of Jackson's backpack, thus the warrantless search was per se unreasonable. The State resisted the motion, and a hearing was held May 15, 2013. The district court denied the motion on July 5, 2013, finding Olson had apparent authority to consent to the search.

On October 8, 2013, Jackson waived his right to a jury trial and stipulated to a trial on the minutes of testimony. The district court found Jackson guilty of both counts of second-degree robbery on November 20, 2013. Jackson was sentenced to two concurrent terms of incarceration not to exceed ten years with a seventy-percent mandatory minimum.

Jackson appeals.

---

[1] Jackson also confessed to a robbery that had taken place on November 13, 2012, in Iowa City.

**II. Standard of Review.**

"Claims that the district court failed to suppress evidence obtained in violation of the Federal and Iowa Constitutions are reviewed de novo." *State v. Short*, 851 N.W.2d 474, 478 (Iowa 2014). We independently evaluate the totality of the circumstances shown in the record. *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004). We give deference to the district court's findings of fact due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings. *Id.* "Warrantless searches and seizures are per se unreasonable unless the State proves by a preponderance of the evidence that a recognized exception to the warrant requirement applies." *State v. Howard*, 509 N.W.2d 764, 766 (Iowa 1993).

**III. Discussion.**

The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution provide protection from unreasonable searches and seizures. Warrantless searches are per se unreasonable unless a recognized exception to the warrant requirement applies. *Howard*, 509 N.W.2d at 766. Consent to search is an exception to the warrant requirement. *Reinders*, 690 N.W.2d at 83.

**A. Apparent Consent to Search.**

Here, the question is not whether Olson had the authority to consent to the search of his room. Even if Jackson was an overnight guest who had a privacy interest in the room, Olson had the right to consent to the general search of the space. *See State v. Matlock,* 415 U.S. 164, 170 (1974) ("[T]he consent of one who possesses common authority over premises or effects is valid as against the

absent, nonconsenting person with whom that authority is shared."). However, "[g]uests in a home retain a privacy interest in their personal items that cannot be waived by their host's consent to search the general premises." *State v. Grant*, 614 N.W.2d 848, 854 (Iowa Ct. App. 2000); *see also United States v. Karo*, 468 U.S. 705, 726 (1984) (O'Connor, J., concurring) ("[W]hen a guest in a private home has a private container to which the homeowner has no right of access, . . . the homeowner . . . lacks the power to give effective consent to the search of the closed container."). Thus, Olson did not have actual authority to consent to the search of Jackson's backpack.

Although Olson did not have actual authority to consent, law enforcement officers may rely on the apparent authority of the consenting party. *Grant*, 614 N.W.2d at 854. "For officers to rely on a claim of apparent authority, they must 'reasonably (though erroneously) believe that the person who has consented to their' search had authority to do so." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990)). If the surrounding circumstances raise reasonable doubts as to the authority of the consenting party, officers have an obligation to make further inquiries into the precise nature of the situation. *Grant*, 614 N.W.2d at 854. "Without further inquiry, the search is unlawful." *Id.* Thus, the determinative question is whether the circumstances raised reasonable doubt as to whether the backpack was Olson's.

Jackson cites *Grant* as an authority showing the search was unlawful because there was ambiguity about the ownership of the backpack and the officers failed to inquire further. 614 N.W.2d at 851. We acknowledge there are some similarities in the facts. In both cases, the officers came upon a sleeping

party in some state of disrobement. *Id.* at 851. Here, the officers found Jackson at least feigning sleep while wearing only pajama pants. As it was winter and the officers testified there was snow outside, it should have been clear Jackson had at least some articles of clothing in the apartment. Similarly, in *Grant*, the officers found two nude people sleeping in a guest room. *Id.* Our court reasoned, "It was clear Grant and her companion were guests and, given their state of disrobement, at least some of the clothing in the room belonged to them . . . . It was only after an officer discovered the crack cocaine did officers inquire into who owned the jacket." *Id.* at 854–55. However, here the evidence in question was not found in an article of clothing, but rather a backpack. Neither Jackson's state of dress nor any comments made to the officers should have led the officers to question whether the backpack was Jackson's. Additionally, unlike *Grant*, Jackson, a guest, was staying in the bedroom also occupied by one of the resident roommates. Thus, it was reasonable for the officers to believe the backpack in the room was Olson's, unlike *Grant*, where the nonconsenting parties were staying in a separate guest bedroom.

Our supreme court has acknowledged that a frequent overnight guest enjoys an expectation of privacy in the room where personal belongings are kept. *State v. Campbell,* 714 N.W.2d 622, 631 (Iowa 2006). The court also stated, "That expectation of privacy, however, is applicable only to the unwarranted actions of government actors. It does not ensure the guest's possessions will not be disturbed by the host and those persons for whom the host allows entry." *Id.* Here, there was no evidence Jackson was a frequent overnight guest or that the officers' actions were unwarranted.

In sum, we do not believe the circumstances raised reasonable doubt as to whether the backpack was Olson's before the search of the backpack, and we do not believe the law enforcement actions were unwarranted.  Thus, the officers did not have an obligation to inquire further.

**B. Actual Authority to Consent.**

Jackson maintains, in the alternative, that the Iowa Constitution should be applied more stringently than the federal constitution.  Specifically, he maintains under the Iowa Constitution, only consent from someone with the actual authority to do so should be an exception to the warrant requirement.  If we find this argument has not been preserved for our review, he maintains trial counsel was ineffective for failing to properly preserve the argument.

Although trial counsel argued Jackson's rights had been violated under article I, section 8 of the Iowa Constitution, counsel did not argue for the adoption of a new standard as Jackson does now.  The State maintains, and we agree, that Jackson's argument regarding the more stringent application of the Iowa Constitution was not preserved for our review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  Thus, we consider Jackson's claim that trial counsel was ineffective for failing to preserve the argument.

We generally preserve ineffective-assistance-of-counsel claims for postconviction relief proceedings.  *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011); *see also* Iowa Code § 814.7(3) ("If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may

decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822."). "Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *State v. Tate*, 710 N.W .2d 237, 240 (Iowa 2006). We prefer to reserve such claims for development of the record and to allow trial counsel to defend against the charge. *Id.* As "[e]ven a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Bentley*, 757 N.W.2d 257, 264 (Iowa 2008). If the record is inadequate to address the claim on direct appeal, we must preserve the claim for a postconviction-relief proceeding, regardless of the potential viability of the claim. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

Here the record is inadequate to address Jackson's claim, as we do not know what trial strategy trial counsel employed. *See State v. Laffey*, 600 N.W.2d 57, 61 (Iowa 1999) ("Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel."). The issue of whether trial counsel was ineffective is preserved for possible future postconviction-relief proceedings. *See Johnson*, 784 N.W.2d at 198 (holding a claim of ineffective assistance of counsel that cannot be addressed on appeal because of an inadequate record must be preserved for postconviction-relief proceedings).

**IV. Conclusion.**

Because we do not believe the circumstances raised reasonable doubt as to whether the backpack was Olson's or that the officers' actions were unwarranted, the officers properly may rely on Olson's apparent authority to

consent to the search.  Additionally, we find the argument regarding the Iowa Constitution was not preserved for our review, and we preserve Jackson's claim of ineffective assistance of counsel for possible postconviction-relief proceedings. We affirm.

**AFFIRMED.**